Howard NEE HAO WONG, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 74–2596.

United States Court of Appeals,
Ninth Circuit.

March 21, 1977.

Joe M. Chan, Hardesty & Lau, San Francisco, Cal., argued, for petitioner.

Mary Jo Grotenrath, Atty., Govt. Reg. & Labor Section, Crim. Div., Washington, D. C., argued, for respondent.

Before MERRILL, WRIGHT and CHOY, Circuit Judges.

MERRILL, Circuit Judge:

■ Petitioner, an alien, seeks review of a final order of the Board of Immigration Appeals dismissing petitioner's appeal from a decision of an immigration judge, finding him deportable. The major question presented is whether due process requires that deportation proceedings must be postponed until the alien is competent to participate intelligently in the proceedings. We conclude that it does not; that the proceedings conducted in this case were consistent with due process. We therefore affirm the decision of the Board of Immigration Appeals.

Petitioner is an unmarried male citizen of China, last a resident of Hong Kong, aged 36 at the time of his hearing in 1974. He gained entry to this country in 1958 at Tacoma, Washington, as a nonimmigrant student and has continuously remained in the United States since that date.

During petitioner's stay in the United States he has been hospitalized for mental disturbance on numerous occasions in both California and Minnesota. Petitioner, presently dependent upon public assistance, resides in a community care center in San Francisco. Petitioner's state appointed conservator testified, and petitioner's counsel does not dispute, that petitioner's emotional condition is such that he is likely to require lifelong dependency upon publicly provided care for his needs. Petitioner's mother, sister and brother reside in the United States but have not maintained contact with petitioner. Apparently, they are unable or unwilling to offer him any assistance.

The Immigration and Naturalization Service sought deportation on the ground that petitioner, as a nonimmigrant alien, had overstayed his permission to remain in this country. Immigration and Nationality Act § 241(a)(2), 8 U.S.C. § 1251(a)(2) (1970). A deportation hearing was conducted on January 8, 1974, before an immigration judge as is required under § 242(b) of the Act, 8 U.S.C. § 1252(b) (1970). Petitioner was present, represented by counsel, and accompanied by his conservator who testified on petitioner's behalf. Petitioner's counsel admitted deportability for remaining longer than permitted, as charged.

Having conceded deportability, petitioner, on the ground that his mental condition and need for care would constitute deportation "an extreme hardship" to him, applied for suspension of deportation under the Immigration and Nationality Act § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1970).[1] The immigration judge found that petitioner "has the necessary residence in this country to qualify for that privilege," and that deportation would constitute an extreme hardship to him. His good moral character was not disputed. Thus, the prerequisites to an exercise of discretion to suspend deportation existed. The immigration judge concluded, however, that petitioner's case was not a situation in which suspension should be granted.

The Board of Immigration Appeals found the immigration judge's denial of suspen-

1. This section grants the Attorney General discretion to suspend deportation and adjust the status of the alien to that of one lawfully admitted for permanent residence if the alien has been physically present in the United States for a continuous period of not less than seven years immediately preceding the application, proves that he was and is a person of good moral character, and that "deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien * * *."

sion to have been a reasonable exercise of discretion in view of the circumstances. This petition followed.

Petitioner contends that the deportation hearing was lacking in due process, since he was not competent to participate intelligently in the proceedings against him. Counsel for petitioner moved to have the hearing continued until such time as he was competent. He asserts on appeal that denial of the motion was a denial of due process.

■ Aliens subject to deportation proceedings are, indeed, protected by the constitutional right to procedural due process. *The Japanese Immigrant Case*, 189 U.S. 86, 100–101, 23 S.Ct. 611, 47 L.Ed. 721 (1903). Deportation, however, is not a criminal proceeding, and the full trappings of procedural protections that are accorded criminal defendants are not necessarily constitutionally required for deportation proceedings. *United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir. 1975).

■ The Immigration and Naturalization Act contemplates that deportation proceedings may be had against mental incompetents. Indeed, under certain circumstances (not present here) mental problems constitute a ground for exclusion, 8 U.S.C. § 1182(a)(2), (3), and (4) (1970), and for deportation, 8 U.S.C. § 1251(a)(3) (1970). Section 242(b) of the Act, 8 U.S.C. § 1252(b) (1970), provides that an alien who is mentally incompetent shall have his rights and privileges protected through prescribed "necessary and proper safeguards." Pursuant to this congressional directive, 8 C.F.R. § 242.11 (1976) provides:

> "When it is impracticable for the respondent to be present at the hearing because of mental incompetency, the guardian, near relative, or friend who was served a copy of the order to show cause shall be permitted to appear on behalf of the respondent. If such a person cannot reasonably be found or fails or refuses to appear, the custodian of the respondent shall be requested to appear on behalf of the respondent."

Throughout the hearing before the immigration judge petitioner was present and was accompanied by his state court appointed conservator, who testified fully in his behalf, and by his counsel.

In our judgment the proceedings had here were fundamentally fair in the manner in which protection of the rights of petitioner was afforded. The hearing in question here involved two separate claims; first, the claim of the service that petitioner was deportable for overstaying his permission to remain in this country; second, petitioner's claim for discretionary relief from deportation on the ground that deportation would constitute a hardship.

As to the first aspect of the hearing, there was no controversy. Deportability was conceded and proved by evidence with a very high degree of certitude.

As to the second aspect of the hearing, that involving petitioner's claim for discretionary relief, the showing of hardship made by petitioner was based on his mental condition and need for special care. At the hearing his mental condition was readily apparent. His lack of competency did not prejudice him. On the contrary, it served to make out his case for him, and the immigration judge found that deportation would indeed constitute a hardship. Petitioner's contention that he should have been granted a continuance of the hearing until he had regained competency presents a paradox reminiscent of "Catch 22." His condition of incompetence established hardship. If the hearing were to be postponed until competence was regained, the ground on which suspension was sought would then no longer exist. We cannot agree that it was procedurally unfair to conduct the hearing at a time when the fact of hardship was self-evident rather than to wait until such time as it could no longer be asserted.

We conclude that petitioner was not denied due process.

Petitioner next contends that the immigration judge erroneously declined to exercise discretion to approve or deny the application for suspension of deportation. The Board of Immigration Appeals, noting that

the judge did not expressly state whether his decision was based on statutory ineligibility or on discretion, stated:

"We shall assume that the immigration judge denied the application as a matter of discretion."

This assumption was well founded. The immigration judge stated:

"While the respondent's deportation would undoubtedly constitute an extreme hardship to himself, it does not appear that this is a case in which suspension of deportation should be granted."

This language to us speaks in terms of discretionary action.

Finally, petitioner contends that denial of suspension in the face of conceded hardship was an abuse of discretion. The immigration judge denied suspension because of petitioner's "charge on the people of the State of California while he was hospitalized," his lack of close family ties, contact or contribution to his care, his complete dependency on welfare assistance which was anticipated to continue into the indefinite future, and the distinct possibility that he will require further hospitalization.

As we have noted, suspension of deportation under the Act is not a matter of right but of discretion. 8 U.S.C. § 1254(a) (1970). The extent of the burden upon the public that would result from a favorable exercise of discretion is clearly a relevant and proper consideration. This being so, in our judgment an exercise of discretion guided by attention to such matters cannot be said to constitute abuse.

The order of the Board of Immigration Appeals is affirmed.