**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 5, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEFFREY BRUE, also known as
Hung Van Liederbach,

        Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

        Respondent.

No. 05-9569

**ON PETITION FOR REVIEW FROM THE BOARD**
**OF IMMIGRATION APPEALS**
**(BIA No. A31-272-715)**

Submitted on the briefs:[*]

Laura L. Lichter, Lichter and Associates, P.C., Denver, Colorado, for Petitioner.

Peter D. Keisler, Assistant Attorney General; Mark C. Walters, Assistant Director; Stephen J. Flynn, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**McKAY**, Circuit Judge.

Petitioner Jeffrey Brue, also known as Hung Van Liederbach, petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA), which affirmed the decision of an immigration judge (IJ), that he is an alien and removable because he committed an aggravated felony. Exercising jurisdiction under 8 U.S.C. § 1252, we **DENY** the petition for review.

I.

Petitioner was born in Vietnam in 1968. He has been told that his mother abandoned him at an early age because of his Amerasian characteristics. In 1973, he emigrated to the United States and was admitted as a lawful permanent resident. He was placed with a foster family, the Van Liederbachs, and lived with them until 1977. Petitioner alleges that he was physically, sexually, and emotionally abused by Mr. Van Liederbach and an older adopted sister.

Petitioner was next placed with Keith and Madonna Brue, who adopted him in 1978. Petitioner lived with the Brues in Wisconsin until approximately 1982 when he was placed for a year in a juvenile facility known as Ladd Lake due to behavioral problems including fights at school and temper tantrums at home. He received medication and therapy at Ladd Lake, but was exposed to other troubled youth and sexual advances. Petitioner then returned to the Brues, attempted suicide after his best friend was killed, and was placed at a juvenile residential

-2-

treatment facility, Odyssey House, where he received therapy. In connection with this placement, the Brues surrendered legal custody to the Dane County Department of Human Services.

The Brues filed Form N-402, titled "Application to File Petition for Naturalization in Behalf of Child" (Application), Admin. R. at 330, with the former Immigration and Naturalization Service (INS).[1] The Brues' signatures on the Application are dated April 21, 1985. According to the Application, Mr. Brue indicated that petitioner was mentally disturbed, was not in the Brues' legal custody, had been living at Odyssey House since May 1983, and would not return to live with the Brues at any time in the future. The Application contains a "Nonfiled" box, in which was written "not residing with parents in legal custody." *Id.* at 332.

After his discharge from Odyssey House, petitioner engaged in a series of criminal acts in Wisconsin resulting in a variety of arrests, charges, and sentences. In 1990, he moved to Colorado and, in 1992, pleaded guilty to a violation of Colo. Rev. Stat. § 18-3-403 (repealed 2000), sexual assault in the second degree, based on a sexual encounter with a twelve-year-old girl. Petitioner claims the girl told him she was sixteen and that the encounter was

---

[1]     "On March 1, 2003 the INS ceased to exist, and its responsibilities were divided among three distinct agencies formed within the new Department of Homeland Security." *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1160 n.1 (10th Cir. 2004).

consensual. He was sentenced to eight years' confinement and served approximately five years, receiving counseling and therapy for his diagnosed bipolar disorder and his sexual misconduct. In 2000, petitioner pleaded guilty to a violation of Colo. Rev. Stat. § 18-6-701, contributing to the delinquency of a minor, based on offering drugs to a minor male in exchange for sex. He was sentenced to four years' confinement.[2]

Upon his release in 2003, the Department of Homeland Security served petitioner with a Notice to Appear (NTA), charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii) based on his convictions of two separate crimes involving moral turpitude and on his conviction of an aggravated felony, sexual abuse of a minor. Petitioner denied the majority of the charges in the NTA, asserted that he was a United States citizen, and requested a variety of forms of relief from removal, including, as relevant here, restriction on removal under 8 U.S.C. § 1231(b)(3).

## II.

Initially, David Cordova was the IJ assigned to the administrative proceeding. The record reflects that he held two preliminary hearings, one in December 2003 and one on June 17, 2004, at which petitioner's counsel argued

---

[2] As a result of a motion for postconviction relief, petitioner's eight-year sentence for the 1992 offense was vacated in 2004 based on ineffective assistance of counsel and replaced with a sentence of ten months with credit for time served. His four-year sentence for the 2000 offense was not altered.

that petitioner lacked the mental competency to understand the nature of the charges against him or assist in his own defense. Immigration Judge Cordova expressed concern about petitioner's competency and indicated that he would sign an order for an evaluation if counsel for both parties could agree on its contents and petitioner's counsel provided a proposed order. *See, e.g.*, Admin. R. at 65-66. The record contains a proposed order that accompanies an unsigned copy of a motion requesting the Immigration Court to order a mental health evaluation. *See* Admin. R. at 621-24. It is unclear whether the motion or the proposed order were ever filed.

Immigration Judge Cordova then stopped hearing cases, and a new immigration judge assigned to the case, J.P. Vandello, held five hearings between June 30 and December 7, 2004. Petitioner testified about his history at length, including many of the details set forth above, in particular those surrounding the 1992 and 2000 felony offenses. Petitioner also called a psychologist, Dr. Kim, as a witness. Dr. Kim had reviewed petitioner's records and conducted a two-hour mental status exam in July 2004. He testified that petitioner has an IQ score in the mild mental retardation range and a gamut of psychiatric symptoms, including transitory suicidal thoughts; depression; bizarre thinking and behavior, including persecutory ideation; psychotic or formal thought disorder symptoms such as auditory and visual hallucinations on an intermittent basis; and bipolar and post-traumatic stress disorders. Dr. Kim also testified that petitioner believes

someone had put a chip in his ear and something in his food. Dr. Kim opined that petitioner would benefit from treatment in a residential group home and is not a threat to physically assault others.

Immigration Judge Vandello issued a written decision in which he found that petitioner was not a United States citizen, was removable because his 1992 and 2000 offenses were aggravated felonies or crimes involving moral turpitude, and was not eligible for or entitled to any of the requested relief. He did not make any finding concerning petitioner's competency, but did note that petitioner has a "serious mental illness," Admin. R. at 57. He ordered petitioner removed to Vietnam. The BIA declined to administratively close the proceedings due to petitioner's alleged incompetence, substantially agreed with the IJ's decision, and dismissed the appeal. This petition for review followed.

### III.

In this court, petitioner does not challenge the categorization of his 1992 and 2000 offenses as aggravated felonies. Instead, he raises the following arguments: (1) because he met the statutory requirements for naturalization when the Brues tendered the 1985 Application on his behalf, he automatically acquired citizenship and is therefore not subject to removal; (2) the removal proceedings violated his Fifth Amendment due process rights because he is mentally incompetent; and (3) the agency failed to consider the appropriate factors when

finding that he had committed a "particularly serious crime" and therefore was not eligible for restriction on removal pursuant to 8 U.S.C. § 1231(b)(3).

We have limited jurisdiction under 8 U.S.C. § 1252 to review a final order of removal. Ordinarily, we may review citizenship claims provided there are no disputed issues of material fact. *See* 8 U.S.C. § 1252(b)(5). In contrast, we lack jurisdiction if, as here, a petitioner is subject to removal for commission of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). *See id.* § 1252(a)(2)(C). However, through the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), Congress expressly granted us jurisdiction to review constitutional claims and questions of law raised in a petition for review notwithstanding statutory limitations such as § 1252(a)(2)(C). *See* 8 U.S.C. § 1252(a)(2)(D). As Congress explained:

> [T]he purpose of [§ 1252(a)(2)(D)] is to permit judicial review over those issues that were historically reviewable on habeas— constitutional and statutory-construction questions, not discretionary or factual questions. When a court is presented with a mixed question of law and fact, the court should analyze it to the extent there are legal elements, but should not review any factual elements.

H.R. Rep. No. 109-72, at 175 (2005).

We conclude that, notwithstanding the aggravated felony bar, we have jurisdiction over the entirety of the petition in this case pursuant to 8 U.S.C. § 1252(a)(2)(D). To the extent petitioner claims he automatically acquired citizenship because he met the statutory requirements at the time the Brues filed

-7-

the 1985 Application on his behalf, we have jurisdiction to review this as a question of law because the facts are undisputed and resolution turns on interpretation of the applicable statutory section. *See Abiodun v. Gonzales*, ___ F.3d ___, Nos. 05-9585 and 05-9603, 2006 WL 2501425, at * 4-5 (10th Cir. Aug. 30, 2006) (exercising jurisdiction to consider whether, on undisputed material facts, a petitioner who filed a naturalization application satisfied the public ceremony requirement of 8 U.S.C. § 1448 by signing an oath of allegiance and so became a United States national).[3]  To the extent that petitioner makes a due process argument, he raises constitutional and statutory-construction issues that clearly fall within § 1252(a)(2)(D). *See Morgan v. Attorney General*,

---

[3]  We note that the terminology associated with the naturalization procedure in 1985 has led to some confusion on this issue.  Prior to the Immigration Act of 1990, those seeking naturalization were required to file two documents, an application and a separate petition for naturalization.  S*ee* 7 Charles Gordon et al., Immigration Law and Procedure § 96.02[3] (2006) (ILP).  Indeed, this is reflected in the name of the form the Brues filed, "Application to File Petition for Naturalization in Behalf of Child."  Admin. R. at 330.  The application was a "necessary antecedent" to filing a petition.  ILP § 96.02[3].  The fact that the "Nonfiled" box was filled in on the Application that the Brues filed, therefore, indicates that a *petition* was not filed, not that the INS considered the Application to be "nonfiled" or that the INS denied the Application or a petition.  Accordingly, this case does not involve the denial of a naturalization petition, which now is termed simply an "Application for Naturalization," *see id.* § 96.03[2].  If Brue's claim of automatic citizenship arose from such a denial, we would lack jurisdiction.  *See Abiodun*, 2006 WL 2501425, at * 5 (holding that § 1252(a)(2)(D) is of questionable relevancy because § 1252(b)(5) does not permit consideration of a claim that an application for naturalization was unlawfully denied in a petition for review of removal orders; such a claim "must be brought before the United States district court for the district in which the petitioner resides").

432 F.3d 226, 229 (3d Cir. 2005). And as for the agency's determination that petitioner committed a particularly serious crime, we conclude that it does not present, as respondents argue, a completely unreviewable discretionary decision. "While we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine [under the REAL ID Act] whether the BIA applied the correct legal standard in making its determination." *Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006). We review each of the issues raised in the petition de novo. *See Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005) (legal questions); *Agosto v. INS*, 436 U.S. 748, 753 (1978) (citizenship).

Petitioner argues that, when the Brues presented the Application to the INS in 1985, he met all the conditions of 8 U.S.C. § 1434 permitting the naturalization of adopted children; therefore, he argues, he automatically became a United States citizen. As respondents correctly point out, however, § 1434 was repealed in 1978, and Congress amended 8 U.S.C. § 1433 so that it applied to adopted children instead. *See* Pub. L. No. 95-417, §§ 6-7, 92 Stat. 917 (1978). At the time the Brues presented the Application to the INS in 1985, § 1433 permitted naturalization of an adopted child "only if the child is residing in the United States, in the custody of the adoptive parent or parents, pursuant to a lawful admission for permanent residence." 8 U.S.C. § 1433(b) (1982) (amended 1986, 1990, 1994, 1999, 2000, 2002). This condition clearly was not met here because

petitioner was residing at Odyssey House, not in the legal or physical custody of the Brues. Accordingly, petitioner could not automatically have become a United States citizen by virtue of simply tendering the Application to file a petition to naturalize even if automatic acquisition of citizenship would be permissible under the statute, an issue on which we express no opinion.

Petitioner next argues that the removal proceedings violated his due process rights because Immigration Judge Vandello elected to ignore the issue of petitioner's mental competency, which he contends prevented him from understanding the nature of the proceedings and assisting in his defense. We disagree.[4] Aliens are not necessarily entitled to the full range of due process protections afforded to criminal defendants. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984); *Nee Hao Wong v. INS*, 550 F.2d 521, 523 (9th Cir. 1977). "Rather, the procedural safeguards are minimal because aliens do not have a constitutional right to enter or remain in the United States." *Schroeck v. Gonzales*, 429 F.3d 947, 951-52 (10th Cir. 2005) (quotation omitted). Accordingly, we have held that, "when facing removal, aliens are entitled only to procedural due process, which provides the opportunity to be heard at a

[4] We consider this issue fully aware that, although the IJ did not make any competency findings, the BIA found insufficient evidence to establish that petitioner could not comprehend the nature of the proceedings against him. This appears to run afoul of 8 C.F.R. § 1003.1(d)(3)(iv), which provides that the BIA "will not engage in factfinding in the course of deciding appeals." However, neither party has raised this issue, and our disposition does not require us to address it.

meaningful time and in a meaningful manner." *Id.* at 952 (quotations omitted).

Thus, contrary to the substantive due process protection from trial and conviction

to which a mentally incompetent criminal defendant is entitled, *see Smith v.*

*Mullin*, 379 F.3d 919, 930 (10th Cir. 2004), removal proceedings may go forward

against incompetent aliens, *Nee Hao Wong*, 550 F.2d at 523.

Removal proceedings against mentally incompetent aliens, however, are not

without constraint. Congress has provided that, "[i]f it is impracticable by reason

of an alien's mental incompetency for the alien to be present at the proceeding,

the Attorney General shall prescribe safeguards to protect the rights and

privileges of the alien." 8 U.S.C. § 1229a(b)(3). Pursuant to this statutory

directive, the Attorney General has prescribed the following:

> When it is impracticable for the respondent to be present at the
> hearing because of mental incompetency, the attorney, legal
> representative, legal guardian, near relative, or friend who was
> served with a copy of the notice to appear shall be permitted to
> appear on behalf of the respondent. If such a person cannot
> reasonably be found or fails or refuses to appear, the custodian of the
> respondent shall be requested to appear on behalf of the respondent.

8 C.F.R. § 1240.4. The regulation suggests that, when mental incompetence

makes an alien's presence at a removal proceeding impracticable, an IJ may

conduct the proceeding provided that the alien is represented by an attorney or

other person; a custodian is required only when the alien has no other

representative.

As respondents point out, the statute and the regulation facially appear to require no procedural safeguards if an unrepresented, mentally incompetent alien is nevertheless able to be present at his removal proceeding. We need not delve into this issue because, even assuming petitioner was incompetent at the time of his removal proceedings, an issue we expressly do not decide, he was represented by counsel. Accordingly, the IJ had no obligation under either the statute or the regulation to consider petitioner's mental competency because the procedural safeguards they envision were already in place.

Additionally, petitioner received the process he is due under the Fifth Amendment because he has not shown that the removal proceedings caused him prejudice, a requirement for a successful due process challenge, *see Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1165 (10th Cir. 2004). Petitioner's counsel asserts that, due to petitioner's mental status, petitioner was unable to identify facts, evidence, or potential witnesses that would support his applications for relief. However, petitioner's claim of citizenship and most of his requests for relief from removal turned on undisputed facts or legal issues unaffected by his competence. Although his testimony occasionally drifted off point, he largely was able to answer the questions posed to him and provide his version of the facts surrounding his past, particularly the details of his conviction for the 1992 offense, second degree sexual assault. The details of that conviction are central to his argument, discussed below, that it was not a "particularly serious crime"

-12-

because, according to him, the twelve-year-old victim consented and no force was involved. However, his mental state did not preclude him from relating these details, and the IJ specifically recounted them in his decision. Accordingly, we conclude that the removal proceedings provided petitioner with the opportunity to be heard at a meaningful time and in a meaningful manner.

Petitioner's final argument concerns his request for restriction on removal, which he is entitled to if he can show that removal to Vietnam would threaten his life or freedom based on his race, religion, nationality, membership in a particular social group, or political opinion, *see* 8 U.S.C. § 1231(b)(3)(A). However, this relief is not available to an alien who has committed a "particularly serious crime." *Id.* § 1231(b)(3)(B)(ii). The IJ determined that petitioner's 1992 and 2000 offenses each qualify as a "particularly serious crime."[5]

The statute provides no helpful guidance in defining "particularly serious crime" as it relates to petitioner.[6] In *Matter of Frentescu*, the BIA set forth

---

[5] We normally review the BIA's decision when, as here, it is authored by one Board member pursuant to 8 C.F.R. § 1003.1(e)(5). *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). However, we may look to the IJ's decision to understand the BIA's decision better if the BIA's decision "explicitly incorporates or references an expanded version of the same reasoning" that the IJ gave, *id.*, and we do so here.

[6] Although a "particularly serious crime" includes aggravated felonies for which an alien has been sentenced to an aggregate term of imprisonment of five years or more, this does not "preclude the Attorney General from determining that, notwithstanding the length of the sentence imposed, an alien has been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B). The

(continued...)

-13-

factors to which it looks in judging the seriousness of a crime: (1) the nature, circumstances, and underlying facts of the conviction, (2) the type of sentence, and (3) "most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982), *superseded in part on other grounds by statute*, The Immigration Act of 1990, Pub. L. No. 101-649, § 515, 104 Stat. 4978, 5053 (1990).

The IJ, fully aware of the facts of the 1992 offense, concluded that it was a particularly serious crime because the victim of the sexual assault was a child of twelve and petitioner was a danger to the community. The BIA, also aware of the full factual background of that offense, recited two of the *Frentescu* factors, including the most important one, danger to the community, and agreed with the IJ. We are satisfied that both the IJ and the BIA considered the appropriate factors in reaching their conclusions as to the 1992 offense. The BIA did not reach the question of whether the 2000 offense was a particularly serious crime. As the statute requires a conviction of only one particularly serious crime in order to render an alien ineligible for restriction on removal, this was an appropriate disposition.

For the foregoing reasons, we **DENY** the petition for review.

---

[6](...continued)
aggregate sentence for petitioner's two aggravated felonies was, after his post-conviction motion, four years and ten months.

-14-