Ronald Edward SOOBRIAN, Petitioner

v.

**ATTORNEY GENERAL OF the UNITED STATES,** Respondent.

No. 08–4626.

United States Court of Appeals, Third Circuit.

Argued June 2, 2010.

Opinion filed: July 23, 2010.

Steven A. Morley, Esquire (Argued), Morley, Surin & Griffin, Philadelphia, PA, for Petitioner.

Daniel I. Smulow, Esquire (Argued), United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for Respondent.

Before: AMBRO, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

Ronald Soobrian petitions for review of a final order of removal. Although he was twice granted protection under the Convention Against Torture ("CAT") by the Immigration Judge ("IJ"), the Board of Immigration Appeals ("BIA") reversed each time and ordered him removed. The BIA also upheld the IJ's determination that Soobrian was not entitled to withholding of removal. In his petition, Soobrian further argues that he was denied due process of law under the Fifth Amendment when he was forced to proceed at the removal hearing without an indefinite continuance or a determination of his competency. We grant the petition for review with respect to the CAT claim only and uphold the BIA's rulings in all other respects.

## I. Factual and Procedural Background

This case has a long history, and we repeat only those facts necessary to resolve the issues before us.

### A. Soobrian's life prior to the current immigration proceedings

Soobrian is a lawful permanent resident of the United States who entered it on May 10, 1974, when he was eight years old. He is a native of Guyana but has remained continuously in the United States since that time. His parents live in the United States and there is no one to look after him in Guyana.

Soobrian developed mental health issues in his teenage years, leading to bizarre behavior, frequent confrontations with authority, and several minor criminal matters. During this time, he was in and out of psychiatric hospitals. Although his parents attempted to get appropriate

treatment for him, he ended up frequently living on the streets of New York City, ranting that he was Jesus, running naked in the streets, and acting out in a psychotic manner.

In early 2002, he was convicted in New York state court of second degree attempted assault and was sentenced to 18–36 months' imprisonment. This was a result of a guilty plea entered after he was found mentally competent to stand trial in spite of his longstanding mental illness (and two prior determinations that he was mentally incompetent to stand trial). The underlying incident involved Soobrian hitting a male victim in the head with a wooden stick, resulting in a laceration and swelling near the eye.

In late 2002, Soobrian was served with a notice to appear, charging that he was removable for having committed an aggravated felony. He appeared in immigration court in Fishkill, New York, while he was serving his sentence on the New York felony. He was excluded from the courtroom because his frequent outbursts were disrupting the hearing. The IJ, proceeding in Soobrian's absence, determined him to be removable, and denied withholding of removal.[1] This decision was affirmed by the BIA in late 2003. At that time, Soobrian had completed the New York sentence and was in the custody of the Department of Homeland Security in York County, Pennsylvania.

Under the then-applicable law, he filed for a writ of *habeas corpus* in the Eastern District of Pennsylvania in early 2004.

Soobrian and the United States Attorney's Office entered into a stipulation granting him a *de novo* immigration hearing, specifying that he would not be excluded from the new hearing and that he would receive proper medication to ensure his attendance at that hearing.

## B. Immigration proceedings leading to this petition for review

### 1. Initial hearings before the IJ result in CAT protection, but not withholding of removal

At the new hearing in May 2005, Soobrian conceded removability and filed a motion for a competency hearing and an indefinite continuance until his competency could be determined. These motions were denied by the IJ, who granted a continuance until September 2005 to aid preparation. In September, the IJ heard testimony and argument on the claims for relief. Two witnesses testified at the hearing. First, Soobrian's mother (Ambrosine Ramberan) testified regarding his mental illness. Second, an expert witness (Jason Calder) testified as to the likely consequences of removing Soobrian to Guyana. Calder's testimony was accepted without opposition from the Government. Soobrian did not testify because his counsel "believe[d] there [we]re competency issues in this case," and he did not believe Soobrian was "competent to testify or accurately recollect what happened that day [of the offense]." A.R. 571–72.[2]

---

1. The Administrative Record reflects that Soobrian had counsel at this first hearing and his family testified on his behalf. The IJ noted that this satisfied 8 C.F.R. § 1240.4, the regulation (identical to § 1240.4) applicable to removal proceedings at the time. A.R. 834.

2. Soobrian's testimony on what happened on the day of the offense would have been rele-

vant to determine whether the aggravated felony was a "particularly serious crime" that would bar withholding of removal on persecution grounds. As discussed below, the IJ found the offense to be *not* "particularly serious" and the BIA did not disturb this ruling, so any additional testimony from Soobrian was ultimately unnecessary.

Soobrian's mother testified that his mental problems began to develop in his teens. He would talk about Jesus Christ and God and the end of the world (believing himself to be Jesus at times), not eat, and not bathe. He would sleep on park benches and beg for food and money on the streets even though he was living with his family. On one occasion, he completely disrobed in public. He was frequently hospitalized. Ms. Ramberan testified that she would receive calls from the New York City Police Department on occasion when Soobrian acted inappropriately and was taken to a psychiatric hospital. She also testified that he is not generally violent, and that on medication he is a different person who is "beautiful, presentable." Soobrian has difficulty caring for himself, including feeding, clothing, and medicating himself (he often resists taking his medication), and she testified that there are no family members or ties to support Soobrian in Guyana.

Calder testified and submitted an affidavit. He opined that it was more likely than not that Soobrian would be abused at the hands of police or government officials if removed to Guyana. He based this opinion on three factors: (1) Soobrian's mental health; (2) his status as a returning criminal deportee; and (3) his Indo–Guyanese ethnicity. He stated that, due to Soobrian's lack of family in Guyana and the state of mental healthcare there, Soobrian "would probably wind up on the streets and in an indigent status." He also testified that Soobrian would likely end up in Georgetown, a majority Afro–Guyanese city, and, furthermore, that he would be "red flagged" as a deportee with a violent criminal conviction (though he would not be automatically detained upon his arrival).[3] Calder stated that the most likely

way Soobrian would draw the attention of under-equipped, poorly trained, and poorly disciplined police would be if he "act[ed] out." He also stated that beatings were not uncommon, and he believed it was more likely than not that Soobrian would be abused in some fashion at the hands of police or government officials, noting that it was a question of "when," not "if," Soobrian would be detained. Calder also testified to some of the more extreme responses to criminal deportees, relating reports that government officials were accused of forming death squads to target known or suspected criminals for extrajudicial execution, though he stated the more direct response was for police to have a heightened violent response against suspected or known criminals.

The IJ issued a detailed nine-page opinion. He determined that the conviction was not a "particularly serious crime" and thus Soobrian could pursue withholding of removal and CAT protection. However, the IJ denied Soobrian withholding of removal under 8 U.S.C. § 1231(b) because neither his ethnicity nor his status as a criminal deportee justified it. Soobrian's ethnicity did not justify withholding because the record did not support a finding that Indo–Guyanese as a group suffer persecution in Guyana. Also, his status as a criminal deportee did not justify withholding because criminal deportees are not a cognizable social group.

The IJ, however, granted CAT protection after noting that "torture is not synonymous with 'persecution,' although there may be an over-lapping of violence which may encompass both actions." He took special note of the lack of a requirement that violence be "on account of" a particular ground to qualify for CAT protection

3. Soobrian would be "red flagged" as a criminal deportee due to Guyana's Crime Prevention Act of 2002.

(assuming the rest of the definition of torture was met). Turning to the evidence of record, the IJ recognized that the Government had argued that Soobrian would only come to the attention of the police if he acted out, but rebutted this argument by pointing both to Soobrian's history of acting out even when well medicated and the expert witness's testimony that Soobrian inevitably will come to the attention of police and suffer at their hands. The IJ further recognized that, when off medication, Soobrian had committed various non-violent acts that drew the attention of the NYPD over the years, including proclaiming himself to be Jesus and disrobing in public. Looking to the record evidence of conditions in Guyana, the IJ concluded that Soobrian would not be able to take care of himself, would not be able to obtain shelter or medications, and will be confronted by the police. Furthermore, citing to the expert testimony, the IJ found that the State Department Country Report supported the conclusion that torture occurred in detention in Guyana because it acknowledged that mistreatment of prisoners continues to be a problem, with little progress made by the Guyanan government in pursuing alleged abuses. The IJ noted that it was "inevitable" that Soobrian would encounter police, and he would "likely ... suffer intentional severe abuse ... [that] constitutes torture under applicable case law." The IJ concluded by noting that Soobrian need not prove that he *will* be tortured, only that it is *likely*, and granted CAT protection.

## 2. The BIA upholds the denial of withholding of removal, and it reverses the grant of CAT protection

In March 2006, the BIA issued a split decision affirming the IJ's denial of withholding of removal on persecution grounds, affirming the IJ's decision to proceed with the removal hearing without granting a continuance, and reversing the IJ's grant of CAT protection.

On the persecution claims, the BIA agreed with the IJ that any mistreatment Soobrian might experience "as a result of his mental illness or criminal deportee status [ ] would not constitute persecution on account of a statutorily protected ground." The BIA also upheld the IJ's determination "that there was no evidence to establish [that Soobrian] was likely to be singled out for persecution or that there was a pattern or practice of persecutory motives against the Indo–Guyanese ethnicity as a whole." Therefore, the BIA agreed with the IJ that Soobrian had "failed to carry his burden of proving a clear probability of persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion."

As for Soobrian's mental competency, the BIA found that the IJ conducted the proceedings in accord with procedural safeguards and regulations. It claimed to lack jurisdiction to consider whether the regulations relating to incompetent aliens are unconstitutional.

Addressing the CAT claim, the BIA held that the IJ's "conclusion that [Soobrian] is likely to be imprisoned and tortured upon his return to Guyana is clearly erroneous." It noted that the evidence did not establish that it was more likely than not that Soobrian would be imprisoned and tortured, citing to a State Department Country Report, and stated that there was "no evidence that the authorities intentionally create and maintain [poor prision] conditions in order to inflict torture." The BIA therefore "f[ou]nd clear error in the [IJ]'s factual determinations," and vacated the grant of CAT protection. One BIA member dissented; she would have affirmed the grant of CAT protection because she

discerned no clear error in the IJ's factual findings.

### 3. Petition for review and unopposed remand

Soobrian filed a timely petition for review in our Court. In November 2006, pursuant to an unopposed motion, we remanded the matter to the BIA for consideration of whether the class of mentally ill persons is a "particular social group" for purposes of withholding of removal and to clarify the standard of review used to decide whether Soobrian established that he was "more likely than not" to be tortured if removed.

### 4. The BIA's actions on remand

On remand, the BIA addressed three issues: (1) whether Soobrian was a member of a particular social group of "mentally ill persons"; (2) its standard of review in determining whether Soobrian met the legal standard for establishing eligibility for CAT protection; and (3) clarification of its reasons for reversing the IJ's grant of CAT protection.

On the first issue, the BIA determined that the IJ did not specifically address the particular social group of "mentally ill persons," and it remanded to the IJ to make relevant findings of fact and to enter a legal determination on the issue in the first instance.

As for the second issue, the BIA reversed the statement made in its March 2006 opinion. Even though that decision purported to apply a "clearly erroneous" standard of review, in a footnote it noted that its earlier opinion had "mistakenly stated that 'the Immigration Judge's con-

clusion that [Soobrian] is likely to be imprisoned and tortured upon his return to Guyana is *clearly erroneous.'* Such a predication as to the probability of future torture is a mixed question of law and fact, which [it] review[s] *de novo.*" App. 91 n. 1 (emphases in original).

Finally, the BIA clarified that it reversed the IJ because a State Department report "indicated that there were no reported incidents or evidence of torture and that, although the country report indicated that poor prison conditions exist in Guyana, there was no evidence that authorities intentionally created and maintained such conditions in order to inflict torture." However, because two intervening decisions were not available to the IJ—*Matter of J—F—F—*, 23 I. & N. Dec. 912 (BIA 2006), and *Lavira v. Attorney General,* 478 F.3d 158 (3d Cir.2007) [4]—the BIA remanded to the IJ "for a new decision on [Soobrian's] application for protection under the Convention Against Torture."

### 5. IJ again grants CAT protection and again denies withholding of removal

On remand, the IJ received additional briefing and re-evaluated the withholding of removal and CAT claims. In a second written decision, the IJ again denied withholding of removal and again granted CAT protection.

Addressing the withholding-of-removal claim, the IJ only considered whether relief could be granted on the ground of "membership in a particular social group" of "mentally ill persons" under our *Fatin* jurisprudence and the BIA's *Acosta* precedent.[5] He noted that there was little prec-

---

4. *Lavira,* however, was later overruled by *Pierre v. Attorney General,* 528 F.3d 180 (3d Cir.2008) (*en banc*).

5. This line of cases requires that the common characteristic that defines the group be "one that the members of the group either cannot change, or should not be required to

edent on this issue, but nonetheless found the record "supportive of [Soobrian's] claimed social group." The IJ concluded that (1) mental illness was an immutable characteristic; (2) it was fundamental to the identity of mentally ill persons and could not be changed; and (3) the evidence was "sufficient[ ] [to] establish[ ] that mentally ill Guyanans are readily visible within that country's society."

However, even though the IJ found a cognizable social group, he also held that the record did not support a finding of any persecutory intent on the part of the Guyanese government because "the record shows little more than that Guyana cannot afford better medical services, or at worst, simply chooses not to expend much of its limited resources on the mentally ill. While either scenario is regrettable, they do not equate to persecution." The IJ also determined that the record did not establish that the Guyanese government was unwilling or unable to control private actors from targeting the mentally ill because, while it was unable to protect every mentally ill person, it arrested and charged perpetrators who attacked the mentally ill.

Revisiting the prior grant for CAT protection, the IJ found the following facts to be supported by the record:

— Soobrian is profoundly mentally ill and on a strict daily regimen of medications;

— even while medicated, it is difficult for him to carry on even a minimally coherent conversation;

— while normally non-violent, he has a conviction for assault even while medicated;

— he has no relatives residing in Guyana

— Guyana's mental health care system is woefully inadequate and large segments of the mentally ill population have little or no access to appropriate medical care or housing;

— his eventual arrest by the police is almost certain;

— his certain exposure to arrest and detention will likely result in the intentional infliction of severe pain or suffering at the hands of the police, prison guards, or fellow prisoners without prison authority interference when, due to a total lack of proper, daily medications, he will unlikely be capable of obeying or understanding orders and directives from authorities.

Acknowledging the BIA's admonition to adhere to *J—F—F—*, the IJ found that each step of the inferential chain was supported by the evidence and reinstated the grant of CAT protection. The IJ also clarified his finding that Soobrian was likely to be subjected to torture at the hands of Guyanese authorities "was not based on the austere prison or detention conditions in Guyana, nor on the 'wil[l]ful blindness' of Guyanan government authorities to [Soobrian's] torture," addressing the concerns of our intervening opinion in *Pierre v. Attorney General*, 528 F.3d 180 (3d Cir. 2008) (*en banc*).

## 6. The BIA again upholds the denial of withholding of removal and again reverses the grant of CAT protection

The BIA issued its last decision in November of 2008. It addressed only the issues it remanded to the IJ: (1) Soobrian's claim that he is a member of a partic-

change[,] because it is fundamental to their individual identities or consciences." *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir.1993) (cit-

ing *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)).

ular social group of mentally ill persons for purposes of withholding of removal; and (2) clarification of the IJ's grant of CAT protection in light of intervening precedent from our Court and the Attorney General.

On the first issue, it "f[ou]nd no legal error in the Immigration Judge's conclusion that [Soobrian] failed to sustain the high burden of proof applicable to withholding of removal." It also did not "find clear error in the factual findings leading up to that determination." It did not decide whether the IJ was correct in determining that "mentally ill persons" was a particular social group, but instead held that, even if it were cognizable, the IJ was correct in "finding that [Soobrian] ha[s] not demonstrated a sufficient likelihood of persecution on account of his membership in such group.... [because he] has not reasonably shown that the Guyanese government's lack of adequate mental health resources is motivated out of an intent to harm its mentally ill citizens." The BIA also upheld the IJ's determination that "the record does not support [Soobrian's] claim that he would be subjected to harm by groups that the Guyanese government is either unable or unwilling to control."

On the second issue, it disagreed with the IJ's finding that Soobrian faces a clear probability of torture in Guyana. It cited to *Matter of V—K—*, 24 I. & N. Dec. 500 (BIA 2008), and reviewed the IJ's finding *de novo*. Citing to *Matter of J—F—F—*, the BIA "disagree[d] with the Immigration Judge's determination that a preponderance of the evidence establishes that every step in [the] hypothetical chain of events [supporting CAT relief] is more likely than not to happen, let alone that the entire chain will come together to result in the probability of torture of [Soobrian]." It noted that while the expert testified that "[Soobrian's] eventual arrest is almost certain, on this record it is far from clear

whether [Soobrian's] behavior ... would bring [about] the ... eventual torture of [Soobrian]." It further held that even if Soobrian were to be arrested, the evidence was "not alone sufficient to demonstrate that [his] prospective torturer will have the required specific intent of inflicting severe pain or suffering."

Accordingly, the BIA again affirmed the IJ's decision on withholding of removal, but again reversed his decision on CAT protection. It ordered Soobrian removed, and this timely petition for review followed.

## II. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) over the timely petition for review of the final order of removal by the BIA.

When the BIA issues its own decision, we typically review that decision and not the IJ's decision, *Sheriff v. Att'y Gen.*, 587 F.3d 584, 588 (3d Cir.2009), but when the BIA relies on the IJ's decision and partially reiterates the IJ's discussion in its decision, we review both decisions, *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir.2009). We have jurisdiction over constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D).

We will review the BIA's legal determinations *de novo*, subject to the principles of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Pierre*, 528 F.3d at 184; *see also Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir.2006). Under the REAL ID Act, factual or discretionary determinations are outside of our scope of review because Soobrian is removable by virtue of having committed an aggravated felony. *Pierre*, 528 F.3d at 184. Questions of law and

constitutional claims remain within our scope of review. *Id.*

## III. Discussion

Soobrian raises three claims in his petition for review: (1) he is entitled to withholding of removal because he is mentally ill, Indo–Guyanese, and would be a criminal deportee; (2) the BIA improperly disturbed the IJ's decision on Soobrian's CAT claim by not reviewing factual findings for clear error; and (3) Soobrian should have been granted a mental competency evaluation to determine if he understood the nature of the proceedings. We grant the petition for review on the CAT claim only, and deny the petition for review on the remaining claims.

### A. Soobrian's persecution claims do not warrant withholding of removal

An alien may not be removed to a country where his or her "life or freedom would be threatened ... because of the alien's race, religion, nationality, membership in a particular social group,[6] or political opinion." 8 U.S.C. § 1231(b)(3)(A). To the extent that we consider persecution "on account of" a protected ground, we require that the persecutor be motivated, at least in part, by a protected ground. *Lukwago v. Ashcroft,* 329 F.3d 157, 170 (3d Cir. 2003). The alien has the burden of proof and must show that it is "more likely than not that he will face persecution" if removed. *See Ambartsoumian v. Ashcroft,*

388 F.3d 85, 88–89 (3d Cir.2004) (citation omitted); 8 C.F.R. § 1208.16(b).

Aliens who have been convicted of a "particularly serious crime" and are a danger to the community of the United States are not eligible for withholding of removal on these grounds. 8 U.S.C. § 1231(b)(3)(B)(ii). The IJ found Soobrian's convictions not to constitute a "particularly serious crime" and considered him eligible for withholding of removal, and the Government did not appeal this ruling.

Soobrian alleges three persecution bases justifying withholding of removal: (1) his Indo–Guyanese ethnicity; (2) his membership in the "particular social group" of criminal deportees; and (3) his membership in the "particular social group" of mentally ill people. As we discuss below, we discern no error in the BIA's conclusion that Soobrian is not entitled to withholding of removal on any of these three grounds.

Soobrian additionally claims that we must evaluate these three bases in the aggregate such that, even if each basis were not alone sufficient to justify withholding, their combination would entitle him to withholding of removal. We reject this assertion. Logically, if he is not persecuted on each individual ground, then he is not persecuted on all three grounds.

#### 1. Ethnicity

■ Soobrian fails to point to any evidence in the record in support of his first basis for withholding of removal, his Indo–Guyanese ethnicity, aside from the conclu-

---

6. To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3) as a member of a "particular social group," an alien must: (1) identify a group that constitutes a "particular social group"; (2) establish that he or she is a member of that group; and (3) show that he or she was persecuted "on account of" membership in that group. *Fatin,* 12 F.3d at 1240. The " 'particular social group' must exist independently of the persecution suffered by the applicant for [withholding of removal]," *Lukwago,* 329 F.3d at 172, and generally requires that the common characteristic that defines the group be one that the members of the group cannot change or should not be required to change because it is fundamental to their individual identities or consciences, *Fatin,* 12 F.3d at 1240.

sory statement that Afro–Guyanese police are more likely to target him. However, the IJ noted that Indo–Guyanese tend to be in a position of power in Guyana (in contrast to working-class Afro–Guyanese), and in any event did not make the factual finding that he would be targeted. Based on this record (and pursuant to the REAL ID Act, we cannot review the facts), Soobrian is not entitled to withholding of relief on this ground.

### 2. Criminal deportees

■ Soobrian's second basis for withholding of removal, membership in the particular social group of criminal deportees, fails because, as we held in *Toussaint v. Attorney General*, 455 F.3d 409, 418 (3d Cir.2006), "criminal deportees are not recognized as a social group." In *Elien v. Ashcroft*, a decision we relied on in *Toussaint*, the First Circuit Court upheld the BIA's refusal to recognize criminal deportees as a particular social group because, "in general, [a country] has a legitimate national interest in protecting its citizens from increased criminal activity." 364 F.3d 392, 397 (1st Cir.2004) (internal quotation marks omitted). Thus, even if Guyanese law targets individuals with criminal records for additional scrutiny, Guyana has a legitimate national interest in protecting its citizens from known criminals, and the BIA did not err in ruling that they did not comprise a cognizable social group.

### 3. Mentally ill people

■ Soobrian's mental illness also fails as a reason to withhold removal because he has not demonstrated that he would be persecuted "on account of" his mental illness. As the BIA assumed it was a cognizable social group, we do the same, but even with this assumption the alleged persecution appears to be a simple lack of resources for the mentally ill in Guyana,

not an intent on the part of the government to persecute mentally ill persons. Indeed, the IJ found that there was no intent to harm mentally ill persons, just a regrettable lack of resources.

Although we recognize as not implausible Soobrian's argument that the lack of resources may be because the Guyanese government does not want to help the mentally ill, he is essentially asking us to second-guess the government's allocation of its scarce resources between the mentally well and the mentally ill. Were a disproportionate allocation of scarce resources alone sufficient to be deemed persecution, we would necessarily become entangled in matters of international budgetary analysis. We decline the invitation.

### B. The BIA applied an incorrect standard of review on the CAT claim

[4] To obtain withholding of removal under the CAT, "[t]he burden of proof is on the applicant ... to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). In this case, the IJ found that Soobrian had met this burden of proof, issuing a detailed opinion in which he made specific factual findings from the record of witness testimony and documentary evidence. The IJ concluded that Soobrian was more likely than not to be tortured if removed to Guyana.

The BIA reversed the IJ's grant of CAT protection by applying a *de novo* standard of review and reversing the IJ's factual findings. As already noted, it initially applied the "clearly erroneous" standard in an earlier opinion, but later expressly disavowed that statement and instead asserted that it had the authority to review mixed questions of fact and law *de novo*.

This was error. A prediction as to the probability of future torture is a mixed question of law and fact, but as we stated in *Kaplun* (reversing the BIA's conclusion in *Matter of V—K—*, 24 I. & N. Dec. 500), the BIA must "break down the inquiry into its parts and apply the correct standard of review to the respective components." *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir.2010). Where, as here, the IJ finds that each step in an inferential chain culminating in "the intentional infliction of severe pain or suffering ... [is] clearly supported by th[e] record" and is more likely than not to happen, App. 80, the BIA may only disturb these factual findings if they are clearly erroneous. Absent that, the BIA may only reverse the grant of CAT protection if the facts as found by the IJ do not meet the legal definition of torture as defined under governing law.

We also note that, in reviewing for clear error, the BIA should bear in mind the difference between its standard of review and that of the Attorney General. *See* Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878, 54,891 (Aug. 26, 2002) ("[T]he Attorney General ... adopt[ed] a 'clearly erroneous' standard for the Board, but use[s] a *de novo* standard himself in reviewing the Board's determination."). Thus, in applying *Matter of J—F—F—*, the BIA must still give deference to the IJ's findings of fact on both (1) the individual links in his chain of events being more likely than not to happen, and (2) the entire chain being more likely than not to happen. While in *J—*

*F—F—*the Attorney General was within his power to reject the "speculat[ions]" of the alien that were made "[a]t the Immigration Judge's urging," *id.* at 921, without any deference to the IJ, the BIA is not in a comparable position. The BIA must give deference to an IJ's factual determinations, including causal chains, and may only reverse if they are clearly erroneous. It did not give correct deference here, and thus we grant the petition for review on the CAT claim.

## C. Soobrian's due process rights were not violated

■ Soobrian also claims that he was denied due process of law under the Fifth Amendment when he was forced to proceed at the removal hearing without an indefinite continuance [7] or a determination of his competency. We disagree; Soobrian was afforded all the procedural protections provided for in the governing statutes and regulations.

"The Fifth Amendment's due process protections apply to aliens in removal proceedings." *Cabrera–Perez v. Gonzales*, 456 F.3d 109, 115 (3d Cir.2006) (per curiam). We have held that "due process requires that aliens threatened with removal are provided the right to a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf." *Id.* Under our immigration laws, there is only a passing reference to an alien's mental competency at a removal hearing. "If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the

---

7. To the extent that Soobrian argues that the IJ abused his discretion in not granting a continuance, we disagree. Soobrian did, in fact, receive a continuance to prepare for the removal hearing. Although he desired an indefinite continuance "to such time as he would be deemed competent to communicate with counsel and understand the nature of the proceedings," because (as we explain below) Soobrian did not need to be competent nor present at the removal hearing, it could not be an abuse of discretion to deny the indefinite continuance.

Attorney General shall prescribe safeguards to protect the rights and privileges of the alien." 8 U.S.C. § 1229a(b)(3).

The Attorney General promulgated a regulation that outlines the "safeguards to protect the rights and privileges of the alien." It reads:

> When it is impracticable for the respondent to be present at the hearing because of mental incompetency, the attorney, legal representative, legal guardian, near relative, or friend who was served with a copy of the notice to appear shall be permitted to appear on behalf of the respondent. If such a person cannot reasonably be found or fails or refuses to appear, the custodian of the respondent shall be requested to appear on behalf of the respondent.

8 C.F.R. § 1240.4. Thus, the Attorney General contemplated that proceedings could go forward against incompetent aliens, even in their absence, provided that certain procedural safeguards were afforded. As noted, these safeguards are designed to provide aliens with "a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."

We are aided by an instructive case from the Tenth Circuit Court, *Brue v. Gonzales*, 464 F.3d 1227 (10th Cir.2006). There, the Court noted that, "contrary to the . . . due process protection from trial and conviction to which a mentally incompetent criminal defendant is entitled, removal proceedings may go forward against incompetent aliens" provided they are given a full and fair hearing with an opportunity to present evidence. *Id.* at 1233 (citations omitted); *see also INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) ("Consistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a [removal] hearing."). Though we need not reach the issue here, the *Brue* Court also noted that "the statute and the regulation facially appear to require no procedural safeguards if an unrepresented, mentally incompetent alien is nevertheless able to be present at his removal proceeding." *Brue*, 464 F.3d at 1233. Given that reading, it concluded that the IJ in that case "had no obligation under either the statute or the regulation to consider [the alien]'s mental competency because the procedural safeguards they envision were already in place" by virtue of the presence of counsel. *Id.*

Likewise, Soobrian was afforded all the procedural protections envisioned by the statute and the regulation. Not only was he actually present at the hearing, he was represented by competent counsel, his mother was present to safeguard his interests, his mother testified on his behalf (relaying his personal history), and an expert witness also testified on his behalf (relaying information about Guyana). Indeed, if Soobrian could be *absent* from the hearing so long as he was represented in accordance with the regulation, he certainly could be *present* at the hearing with the same safeguards in place.

Further, even were there a deficiency in the process afforded him, Soobrian cannot show the "substantial prejudice" required for a successful due process challenge. *See Jarbough v. Att'y Gen.*, 483 F.3d 184, 192 (3d Cir.2007). His mother testified to his personal history, his mental illness, his difficulties taking care of himself, his run-ins with the police, and the lack of anyone to care for him in Guyana. His expert witness testified as to the potential consequences of removal, focusing on the nature of mental health care in Guyana as well as other on-the-ground conditions. His attorney filed briefs, made arguments, questioned witnesses, and was successful in

convincing the IJ to grant relief to Soobrian. Simply put, the removal proceedings "provided [him] the . . . full and fair hearing that allow[ed][him] a reasonable opportunity to present evidence on [his] behalf." *Cabrera–Perez,* 456 F.3d at 115; *see also Brue,* 464 F.3d at 1234 ("[T]he removal proceedings provided [the alien] with the opportunity to be heard at a meaningful time and in a meaningful manner."). Soobrian has not made any showing as to what prejudice he suffered by not having a competency hearing or an indefinite continuance. Accordingly, his due process claim fails.

\*    \*    \*    \*    \*    \*

We agree with the BIA that Soobrian is not entitled to withholding of removal. We also agree that there was no denial of due process. However, the BIA applied an incorrect standard of review with respect to his CAT claim, and we therefore grant the petition for review on that claim only and remand for further proceedings.