

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2006

# Cabrera-Perez v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-3896

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Cabrera-Perez v. Atty Gen USA" (2006). *2006 Decisions.* Paper 543.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/543

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-3896
_____

DOMINGA CABRERA-PEREZ,
                              Petitioner,

v.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES.

_____

On a Petition For Review of a Decision
of the Board of Immigration Appeals
(Agency No. A44-040-186)

_____

Submitted Under Third Circuit LAR 34.1(a)
April 14, 2006

Before: MCKEE, FUENTES and NYGAARD, <u>Circuit Judges</u>

(Filed:   August 1, 2006)

_____

OPINION OF THE COURT
_____

PER CURIAM

        Petitioner Dominga Cabrera-Perez, a native and citizen of
the Dominican Republic, entered the United States in April 1991
on a visitor's visa.  She married Jorge Perez-Rosario, an American

citizen, in the Bronx in December of that year. Mr. Perez filed an adjustment of status application on her behalf, and, following an interview at the United States Embassy in the Dominican Republic, Cabrera became a lawful permanent resident on a conditional basis pursuant to Immigration and Nationality Act ("INA") § 216(a), 8 U.S.C. § 1186a(a) (1993).[1] She was admitted to the United States with that status on March 24, 1993. A.R. 139.[2]

Mr. Perez died on December 6, 1993. The conditional permanent resident statute, INA § 216, provides at subparagraphs (c) and (d) that, in order for the conditional basis to be removed, the alien spouse and the petitioning spouse (if not deceased) jointly must submit to the Attorney General a petition which states that the marriage, in sum and substance, was not entered into for the purpose of gaining an alien's entry as an immigrant. 8 U.S.C. § 1186a(c)(1)(A), (d)(1). The alien spouse and the petitioning spouse (if not deceased) must also appear before immigration authorities for a personal interview. 8 U.S.C. § 1186a(c)(1)(B). The usual time for filing the petition under INA § 216(d)(2)(A), 8 U.S.C. § 1186a(d)(2)(A), is 90 days before the second anniversary of gaining status.

Cabrera did not petition for removal of the conditional basis of her status as required by INA § 216(c) during this time period. Accordingly, her conditional permanent resident status was terminated effective March 25, 1995, the day after the second anniversary of gaining her status. Cabrera was issued a termination notice by the Immigration and Naturalization Service ("INS"), dated January 23, 1996, which stated that she and Mr. Perez had failed to jointly petition for removal of the conditional status as

---

[1] Section 216 of the Immigration and Nationality Act has been amended twice since Cabrera first gained status in ways that have no bearing on this petition for review. Throughout the opinion, we will cite to the version of the statute in effect at the time of the matter discussed, or which we believe was, or will be, applicable, even though our holding does not turn on which version of the statute actually applies.

[2] "A.R." denotes the Administrative Record.

2

follows:

> In accordance with the provisions of Section 216(c) of the Immigration and Nationality Act you and your spouse through whom you obtained your conditional permanent residence were required to file a joint petition requesting removal of the conditional basis of your residence between 12/24/94 and 03/24/95. As of this date, no such petition has been filed. Therefore, in accordance with the provisions of Section 216(c)(2)(A) of the Immigration and Nationality Act, the permanent resident status previously accorded you is hereby terminated as of 03/25/95.

A.R. 139.[3]

On November 13, 1997, Perez filed an I-751 Petition to Remove Conditions on Residence, seeking a waiver of the joint filing requirement because her husband was deceased. A.R. 93, 249.[4] A certificate of death was submitted with the application. Inexplicably, Mr. Perez' mother, the informant on the Death Certificate, had listed Mr. Perez' marital status as "unmarried." A.R. 138. On May 11, 1999, the District Director denied the application, concluding that Cabrera had not entered into the marriage in good faith.

---

[3] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice. Its enforcement functions were transferred to the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002). When the events at issue here predate that reorganization, we refer to the INS in this opinion.

[4] Section 216(d)(2)(B) permits the required petition to be filed after the 90-day period before the second anniversary upon a showing of good cause and extenuating circumstances. 8 U.S.C. § 1186a(d)(2)(B). The timeliness of this waiver petition has never been challenged.

The District Director found the Death Certificate, with its erroneous information, to be probative of the question whether the marriage was entered into in good faith, and did not believe that there was a logical basis for Cabrera's mother-in-law to inform the person who filled out the death certificate that her son had never been married. In addition, Cabrera had failed to submit adequate historical documentation and had failed to appear for a scheduled interview. The decision concludes with an apparent misstatement that "[I]t is obvious that that [sic] your marriage to Jorge Perez was for reasons other than to procure your entry to the United States as an immigrant." A.R. 141-42. Removal proceedings were initiated against Cabrera with service of Notice To Appear on June 2, 1999, charging her as removable under INA § 237(a)(1)(D)(i), 8 U.S.C. § 1227(a)(1)(D)(i), as an alien whose permanent residence status on a conditional basis was terminated.

It was, of course, undisputed that Cabrera and Perez were married. In fact, Mr. Perez had been married twice before, according to their marriage certificate. A.R. 131. Cabrera obtained counsel, and through him, she submitted a persuasive motion to reopen her I-751 waiver petition. She submitted her marriage certificate, Mr. Perez' 1988 divorce decree, A.R. 132-33, a photograph of the happy couple (if body language is any indicator) on a New York City Circle Line tour, A.R. 134, and a statement concerning the proposed testimony of three witnesses in support of Cabrera's contention that her marriage had been entered into in good faith and was legitimate. A.R. 129, 257. On April 17, 2000, Immigration Judge Nicole Y.K. Kim granted the motion and ordered that proceedings be reopened for adjudication of the I-751 waiver petition. The matter was remanded to the District Director. A.R. 70.

On September 24, 2001, Cabrera appeared for her personal interview. However, on March 11, 2002, the District Director again denied her waiver petition, essentially for the same reasons it originally was denied. A.R. 249-251. Again, the District Director did not believe there was a logical basis for Cabrera's mother-in-law to report that her son had never been married, and, again, she opined that there was a lack of historical documentation and a failure to appear for the scheduled interview. Again the decision includes the misstatement that Cabrera's marriage to Perez

4

was for reasons *other than* to gain entry into the United States. Removal proceedings effectively were reinstated.

Cabrera obtained new counsel, Jeffrey B. Steinfeld, Esquire, and she appeared for a Master Calendar hearing on September 26, 2002 before Immigration Judge Esmeralda Cabrera (hereinafter "the IJ"). Again on October 24 and November 21, 2002, at Master Calendar hearings, Cabrera appeared with counsel, prepared to go forward. A.R. 109. On November 21, 2002, a merits hearing date of April 17, 2003 was scheduled. However, this hearing was rescheduled, apparently by Immigration Court staff, to August 11, 2003.

Prior to the August 11, 2003 hearing date, counsel met with a number of witnesses, and prepared them to testify. On August 5, 2003, counsel wrote to the IJ, advising her that Cabrera had filed an EOIR-42A Application for Cancellation of Removal, see 8 U.S.C. § 1229b(b), on November 21, 2002. He also advised the IJ in this letter that Dalia and Gustavo Garcia, Maria Abreu, and Altagracia Aponte, would testify at the August 11 hearing, as follows: "I anticipate presenting testimony from most, if not all, of these witnesses, in addition, to Ms. Cabrera de Perez herself, in support of her Application that she was legitimately married to her deceased husband, Jorge Luis Perez, and resided with him in Bronx, New York from December 13, 1991 through his death, on December 6, 1993." A.R. 143-44.[5] Counsel may also have "re-filed" Cabrera's I-751 waiver petition in November 2002, possibly for the purpose of supplementing it. A.R. 87-88.

---

[5] Section 216(c)(3)(D), 8 U.S.C, § 1186a(c)(3)(D) (2002), provides that any alien whose permanent resident status is terminated may have that decision reviewed in removal proceedings. These proposed witnesses were ideally suited to testify on Cabrera's behalf. Her marriage to Mr. Perez took place in the home of Gustavo and Dalia Garcia; Dalia is Cabrera's sister. A.R. 165, 257. Cabrera and her husband were customers at the pharmacy where Ms. Abreu worked and which Mr. Garcia owned and managed, A.R. 166, 170, and Ms. Aponte knew them as friends and believed them to be "very much in love," A.R. 168.

Counsel appeared in Immigration Court at 1:00 p.m. on August 11, 2003, but Cabrera was not on time. As Cabrera had previously conceded removability, the IJ directed that an *in absentia* order of removal from the United States to the Dominican Republic be entered against her. According to counsel, the IJ took the bench at 1:00 p.m., and ordered removal *in absentia* at approximately 1:20 p.m. A.R. 110.

On November 5, 2003, Cabrera, through the same counsel, moved to reopen the proceedings pursuant to 8 C.F.R. § 3.23(b)(4)(ii) and INA § 240(b)(5)(C), 8 U.S.C. § 1229a(b)(5)(C), and to vacate the *in absentia* order, contending that the failure to appear was due to extraordinary circumstances as defined in INA § 240(e)(1). In addition, Cabrera argued that her tardiness did not constitute a failure to appear, relying on decisions from the Ninth and Seventh Circuits, Jerezano v. Immigration & Naturalization Serv., 169 F.3d 613 (9th Cir. 1999), and Nazarova v. Immigration & Naturalization Serv., 171 F.3d 478 (7th Cir. 1999). The Department of Homeland Security, which had taken over the functions of the INS, opposed the motion.

Cabrera's motion to reopen was supported by affidavits from Cabrera herself and her brother-in-law, Mr. Garcia, the substance of which was that, on the day of the hearing, Mr. Garcia picked up witness Aponte in the Bronx in his car at approximately 11:00 a.m., and drove back home to his house in Hackensack, New Jersey, where Cabrera and Dalia, her sister, waited for another witness, Marisol Solis, a close friend of Cabrera and her late husband, A.R. 28, to arrive. Mr. Garcia and Aponte arrived in Hackensack at approximately 11:30 a.m. The party had planned to depart for the courthouse in Newark at 12:00 p.m., but Ms. Solis was delayed by traffic on the George Washington Bridge, and did not arrive in Hackensack until between 12:20 and 12:30 p.m. They finally left Hackensack for Newark between 12:30 and 12:40 p.m. Mr. Garcia, who was not familiar with Newark, drove this distance of about 18 miles, arriving at the Courthouse on Broad Street and parking the car between 1:15 and 1:18 p.m.

Cabrera proceeded immediately to Courtroom B on the 11th floor, but the door was locked. She then went to the Court office and waiting room sometime between 1:20 and 1:25 p.m., and spoke

to court staff. Court staff made a telephone call, presumably to the IJ, but then advised Cabrera that a final order of removal had been entered. When Cabrera finally left the Courthouse, it was only 1:30 p.m. A.R. 119.

On January 5, 2004, the IJ denied the motion to reopen, concluding that Cabrera's failure to allow time for heavy traffic and her brother-in-law's unfamiliarity with downtown Newark did not constitute exceptional circumstances as defined by INA § 240(e)(1), 8 U.S.C. § 1229a(e)(1) (2003). Cabrera's problems arriving on time were foreseeable and not beyond her control. The IJ stated: "Ultimately, it was [Cabrera's] own responsibility to allocate sufficient time, taking into account potential adverse circumstances, to ensure her timely arrival at her hearing. [She] could have also adequately made sure well in advance that she had the proper directions to get to Court." A.R. 94.

Cabrera appealed pro se to the Board of Immigration Appeals. In her brief, she reiterated the arguments counsel had made on her behalf in her motion to reopen, and she added that her entrance into the Courthouse had been further delayed on the day of her hearing by lines at the security checkpoint. A.R. 68. The Department of Homeland Security declined to file a formal brief, stating that the IJ's decision was essentially correct and should be affirmed. On August 25, 2004, the Board of Immigration Appeals adopted and affirmed the decision of the IJ pursuant to In re: Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994), agreeing with the IJ that Cabrera's reasons for her failure to appear did not demonstrate exceptional circumstances. In a brief statement, the BIA further concluded that her claim that she entered the Courthouse before the IJ issued her order was not a basis for reopening. A.R. 65.

On September 22, 2004, Cabrera moved pro se to reopen the BIA's August 25, 2004 decision, essentially on the same grounds, but she also argued that she was eligible for cancellation of removal under INA § 240A(b). The motion was denied on November 10, 2004 as untimely with respect to the August 11,

7

2003 *in absentia* final administrative order.[6]

Cabrera then filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in United States District Court for the District of New Jersey, challenging, on due process grounds, the *in absentia* order and the BIA's affirmance of the order denying her motion to reopen, and claiming that she was entitled to relief on her I-751 waiver petition and eligible for cancellation of removal. A.R. 262-64. After passage of the Real ID Act of 2005, § 106(c), Pub. L. No. 109-13, the habeas petition was transferred here for treatment as a petition for review.

We will grant the petition for review, reverse the August 11, 2003 *in absentia* removal order, the August 25, 2004 decision of the Board of Immigration Appeals affirming the IJ's denial of the motion to reopen, and the November 10, 2004 decision of the Board of Immigration Appeals preventing Cabrera from pursuing cancellation of removal, and remand with instructions. As a threshold matter, transfer of the habeas petition was proper. The REAL ID Act eliminated judicial review in habeas of a final order of removal, but it permits review of constitutional claims and questions of law of the type raised by Cabrera in a petition for review. 8 U.S.C. § 1252(a)(2)(D). See also Papageorgiou v. Gonzales, 413 F.3d 356, 358-59 (3d Cir. 2005). The Act also provided for transfer of habeas petitions pending in the district courts to the courts of appeals, and further provided that the mandatory 30-day time period for filing a petition for review, 8 U.S.C. § 1252(b)(1), shall not apply to transferred cases. See Kamara v. U.S. Attorney General, 420 F.3d 202, 210 (3d Cir. 2005). Accordingly, our jurisdiction extends to both the August 25, 2004 and November 10, 2004 decisions of the BIA, cf. Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 405 (1995) (Congress envisioned two separate timely petitions for review), and the Attorney General does not contend otherwise.

---

[6] The BIA also acknowledged a new I-751 waiver petition on different grounds and an Application for Naturalization, and advised Cabrera that the Department of Homeland Security had jurisdiction over those applications.

Cabrera appeals the decision of the Board of Immigration Appeals upholding both the IJ's order of removal *in absentia* and order denying her motion to reopen, and she contends that her I-751 waiver petition has merit. The BIA concluded that Cabrera had failed to appear at the August 11, 2003 hearing, and it agreed with the IJ that she was required to demonstrate "exceptional circumstances" to justify reopening the hearing, and that she had not done so. Now appearing pro se once again, Cabrera contends in the main that her tardiness does not rise to the level of a failure to appear. We review the denial of a motion to reopen a removal order entered *in absentia* for abuse of discretion, Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323-24 (1992), but we review de novo the legal question whether Cabrera's due process rights were violated. See Chong v. Immigration & Naturalization Serv., 264 F.3d 378, 386 (3d Cir. 2001).

The Fifth Amendment's due process protections apply to aliens in removal proceedings. See Reno v. Flores, 507 U.S. 292, 306 (1993). In the context of an immigration hearing, due process requires that aliens threatened with removal are provided the right to a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf. See Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003); Chong, 264 F.3d at 386. The importance of a meaningful opportunity to be heard can scarcely be contested, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), nor can it be contested that Cabrera has not had her day in court.

Although we have not heretofore addressed the due process issue presented by this petition for review, three other circuit courts have, in opinions we find persuasive. In Jerezano v. Immigration & Naturalization Serv., 169 F.3d 613, an alien subject to removal missed his asylum hearing by 15 to 20 minutes, and the immigration judge issued an order of removal *in absentia*. The IJ was still on the bench when the alien arrived but refused to reopen the proceeding. Id. at 614-15. The BIA affirmed, concluding that the alien had failed to show exceptional circumstances for his failure to appear.

On a petition for review, the alien contended that his minimal tardiness did not constitute a failure to appear. Id. at 615.

9

The Ninth Circuit agreed, concluding that the IJ should have either reopened or continued the proceeding after the alien arrived, and the failure to do so deprived the alien of a full and fair hearing. The court explained: "Jerezano did appear but he was late; not so late, however, that the IJ (who was still hearing cases) could not have taken up the case at that time." Id. See also Romani v. Immigration & Naturalization Serv., 146 F.3d 737, 739 (9th Cir. 1998) (no failure to appear where petitioner arrived timely at courthouse but went to wrong courtroom).

In Alarcon-Chavez v. Gonzales, 403 F.3d 343 (5th Cir. 2005), the alien had been paroled into the United States upon a finding by the INS that he had a credible fear of returning to Cuba. He had timely appeared for several prior hearings with the assistance of his uncle, but when traveling alone for the first time, he missed the Corpus Christi exit during rush hour traffic, and headed in the wrong direction for a brief period. As a result, he arrived in the courthouse for an 8:30 a.m. hearing at 8:44 a.m. The IJ was still on the bench at 8:44 a.m., but by the time the alien entered the courtroom at 8:50, the IJ had declared that he had failed to appear, issued an order of removal *in absentia*, and exited the courtroom. Id. at 344-45. The Fifth Circuit held that, as a matter of law, arriving in the courtroom twenty minutes late but during business hours, when the IJ is either still on the bench or recently retired and close by, does not constitute a failure to appear. Id. at 345-46.

In Nazarova v. Immigration & Naturalization Serv., 171 F.3d 478, an alien who did not speak English was assured by court staff that an interpreter would be supplied, but when she arrived for her master calendar hearing, there was no interpreter. In anticipation of her next hearing, she hired her own interpreter. On the day she was to be in court, however, her interpreter was two hours late. On the "horns of a dilemma," id. at 481, she chose to wait for him rather than risk another hearing at which she would understand nothing and be unable to convey anything. When she arrived two hours past the scheduled hearing time, she discovered that an order of removal had been entered *in absentia*. She promptly notified the IJ of the reason why she was late in a handwritten motion to reopen only minutes after she found out what had happened, but the motion was denied, and the BIA

10

affirmed.

The Seventh Circuit found a due process violation in that the alien had not received a meaningful opportunity to be heard. Id. at 480. The court reasoned that a non-English-speaking alien has a due process right to an interpreter, and the alien reasonably concluded under the circumstances of the confusing and contradictory actions of immigration court staff that it was her responsibility to find one. Id. at 484. The court stated: " It violates due process to insist that Nazarova should have sacrificed her constitutional right to a meaningful opportunity to be heard so that she could stand corporeal witness - though in essence unable to hear or speak - to her own deportation." Id. at 485.

We agree with the reasoning of Jerezano, 169 F.3d 613, Alarcon-Chavez, 403 F.3d 343, and Nazarova, 171 F.3d 478, and extend it to the facts of this case. We hold that there was no failure to appear, the *in absentia* order was entered in violation of Cabrera's right to due process, and thus it was an abuse of discretion to deny her motion to reopen. When the delay is as short as it was here, there have been no prior instances of tardiness, and the IJ is either still on the bench or recently retired and close by, it is a due process violation to treat the tardiness as a failure to appear. It is accepted practice for Article III judges, U.S. Const. art. 3, § 1, to give marginally tardy litigants a second chance, because "[i]t is both harsh and unrealistic to treat as a nonappearance a litigant's failure to be in the courtroom at the precise moment his case is called." Jerezano, 169 F.3d at 615. We expect nothing less from immigration judges who sit in this circuit, given the severity of the consequences of removal and the minimal disruption to the operations of the Immigration Court. We agree with the Fifth Circuit that judges must "remember that they are appointed, not anointed." Alarcon-Chavez, 403 F.3d at 346.

There is no transcript of the *in absentia* hearing in the administrative record, but the Attorney General does not dispute that Cabrera was only 15 to 20 minutes late. Cabrera's tardiness was minimal, as in Jerezano and Alarcon-Chavez, and like the alien in Alarcon-Chavez, 403 F.3d at 344-45, Cabrera had never before been late, likely entered the courthouse before the IJ left the bench, and immediately made every effort to get the IJ to resume her

11

hearing. When the IJ refused, she promptly filed a motion to reopen. In addition, the reason for Cabrera's tardiness was the late-arriving witness. Had her witness, Ms. Solis, arrived on time, Cabrera's brother-in-law's unfamiliarity with Newark would not have been an issue. As in Nazarova, 171 F.3d at 485, the witness was crucial to Cabrera's case; the INS itself had consistently advised her of the lack of evidentiary support for her case insofar as the District Director had twice before criticized the lack of historical documentation of the legitimate nature of Cabrera's marriage.

The Attorney General has argued that the BIA properly affirmed the IJ's denial of the motion to reopen, because it did not meet the statutory requirements of "exceptional circumstances" which would excuse Cabrera's failure to appear. Where written notice has been provided, section 1229a(b)(5)(C)(i) of title 8 provides that the alien demonstrate that the failure to appear for a hearing was because of "exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). Exceptional circumstances refers to things beyond the control of the alien like "serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances," 8 U.S.C. § 1229a(e)(1) (parentheticals omitted). Cabrera conceded that she failed to appear, and waiting for a witness to arrive and her brother-in-law's lack of knowledge about the fastest route to the Courthouse is not an exceptional circumstance of the type contemplated by the statute.

We likely would agree with the Attorney General's interpretation of the statute if we had to reach the "exceptional circumstances" question, but see Herbert v. Ashcroft, 325 F.3d 68, 71-72 (1st Cir. 2003) (questioning whether there was a true failure to appear but holding that exceptional circumstances existed to justify reopening where petitioner was only thirty minutes late and his counsel had previously sought a continuance on the ground that counsel's presence was required in federal district court), but, because we hold that there was no failure to appear, but only slight tardiness, we need not reach it. See Alarcon-Chavez, 403 F.3d at 345. Where there is no failure to appear in the first instance, there is no need to show exceptional circumstances. 8 U.S.C. § 1229a(b)(5)(C)(i). Moreover, contrary to the Attorney General's

assertion, Cabrera has never conceded that she failed to appear. The Attorney General further contends that Jerezano, 169 F.3d 613, should not extend to the facts of this case because the IJ was no longer on the bench hearing cases. Like the Fifth Circuit, however, we conclude that this is a distinction without a difference, because an alien's fate "should not turn on whether he had the good fortune of other hearings being scheduled to begin subsequent to his own." Alarcon-Chavez, 403 F.3d at 346 n.9.

Accordingly, proceedings are to be reopened for de novo review of the March 11, 2002 decision of the District Director under INA § 216(c)(3)(D) and a hearing on Cabrera's I-751 waiver petition, and, if she desires, on her application for cancellation of removal under INA § 240A(b). A.R. 143-44.[7] At the hearing on her waiver petition, "the burden of proof shall be on the Attorney General to establish, by a preponderance of the evidence, that the facts and information [concerning that the marriage was entered into in good faith] and alleged in the petition are not true with respect to the qualifying marriage." 8 U.S.C. § 1186a(c)(3)(D) (2006); 8 C.F.R. § 216.4(d)(2).

Although we express no view on the ultimate merits of Cabrera's claim of a legitimate marriage, we note that the District Director's March 11, 2002 decision is poorly supported insofar as it credits the Death Certificate notwithstanding that it is factually inaccurate, faults Cabrera for not appearing for her personal interview when in fact the decision itself states that she was interviewed on September 24, 2001, and states a conclusion that Cabrera's marriage to Perez was for reasons *other than* to gain entry into the United States, that is inconsistent with the actual denial of the waiver petition.

_____

[7] The Attorney General has argued on appeal that Cabrera is ineligible for cancellation of removal, because she does not meet the continuous residence requirements of the statute, 8 U.S.C. § 1229b(b)(1), (d) (continuous residence period ends with service of Notice To Appear). We express no view on the merits of this argument as it should be addressed in the first instance by an immigration judge.

We will grant the petition for review, reverse the August 11, 2003 *in absentia* removal order, and the August 25, 2004 and November 10, 2004 decisions of the Board of Immigration Appeals, and remand for further proceedings.

---