NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-3365 and 13-4505
_____

FELIPE SOARES DE PAULA;
JANE MARA ALVES GOMES,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A089-255-937; BIA 1:A089-255-938)
Immigration Judge: Honorable Michael W. Straus
_____

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2014

Before:  FISHER, JORDAN, and HARDIMAN, *Circuit Judges*.

(Filed: September 16, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Felipe Soares De Paula and Jane Mara Alves Gomes petition for review of the

denial by the Board of Immigration Appeals ("BIA") of their applications for asylum,

withholding of removal, and protection under the Convention Against Torture ("CAT").

We will grant in part and deny in part their petitions for review.

## I. Background[1]

De Paula and Alves, husband and wife,[2] entered the United States without inspection from their native Brazil around July 4, 2004, and June 22, 2005, respectively. In 2007, De Paula filed an I-589 application seeking asylum, withholding of removal, and relief under the CAT, listing Alves as a dependent spouse.[3] The government commenced removal proceedings against De Paula and Alves in 2008. At a hearing before an immigration judge ("IJ") on October 8, 2009, Alves filed her own application for relief, listing De Paula as a dependent spouse.

De Paula and Alves based their applications for relief on membership in a particular social group – De Paula's family. They expressed fear of future persecution by a gang in Brazil dating back to a physical altercation between De Paula and a gang leader. The altercation occurred in 2004, as De Paula and Alves were walking down a

---

[1] Neither the immigration judge nor the BIA made any express credibility determinations. Because, "[f]or the purposes of our review the credibility of [De Paula and Alves] has not been determined[,] … we must proceed as if [the] testimony were credible." *Kayembe v. Ashcroft*, 334 F.3d 231, 235 (3d Cir. 2003). We thus recount the background facts from the perspective provided by the petitioners.

[2] De Paula and Alves were legally married in 2009 but have held themselves out to be married since March 2001, before the incidents in question occurred in Brazil.

[3] De Paula tried to file the application on his own in 2006 but was unsuccessful until he obtained the help of a lawyer in 2007. Although De Paula failed to file his application for relief within one year of his arrival in the United States, pursuant to 8 U.S.C. § 1158(a)(2)(B), the immigration judge found that De Paula merited an exception to that time requirement.

2

street in Brazil. During the incident, the gang leader stabbed De Paula, and, in self-defense, De Paula knocked the man unconscious. Members of the gang started searching for De Paula, asking his parents where he was because they wanted to make him "pay for what [he] did." (A.R. at 408.)[4] At the urging of his parents, De Paula left the country a few weeks later for the United States. The gang subsequently harassed Alves and threatened to hurt her unless she divulged De Paula's whereabouts, which prompted her to leave Brazil for the United States as well.

More than a year later, in August 2006, De Paula's father was killed by a gang member after he filed complaints with the Brazilian police about gang-related drug and weapons sales occurring at a local bar. An eye witness told De Paula's mother that the gang member who killed his father had "put the revolver under [his father's] nose and told [him] that [']this was because of [your] son and this is for you[']" before pulling the trigger. (A.R. at 411.) De Paula claims that "only the police could have told" the gang that his father was behind the complaint. (A.R. at 414.) About one week later, a shooting at the same local bar killed a gang member and injured the bar owner, who also belonged to the gang. The bar owner accused De Paula of being the shooter, even though De Paula was in the United States at the time.

De Paula testified that gang members continued to harass his family in Brazil at least through early 2011. In August 2007, for instance, gang members fired shots at De Paula's sisters while they were walking down a street. Despite pleas to do so, the

---

[4] We will use "A.R." to refer to the certified administrative record that was filed in connection with the petitions before us.

3

police never investigated the killing of De Paula's father or the harassment of De Paula's mother and sisters. In her testimony, Alves expressed confidence that the gang had not forgotten the incidents involving De Paula and his father, even though she testified that De Paula's family was no longer being persecuted.

Following a hearing on November 14, 2011, the IJ issued an oral decision on De Paula's and Alves's applications for relief. The IJ rejected De Paula's arguments for asylum and withholding of removal, finding that he had not shown "past persecution based on what happened to his father" and that the gang member that De Paula knocked unconscious "was after [De Paula] for vengeance," which was not a protected ground. (App. at 11.) The IJ thus held that there was no basis for De Paula's purported fear that he would be persecuted in Brazil on a protected ground. The IJ further denied him relief under the CAT for failure to show "that officials in the Brazilian government, including police, [we]re willfully blind to any torture of [him] by th[e] gang." (App. at 12.) With respect to Alves, the IJ cited her testimony "that on a couple of occasions, the gang members asked her where [De Paula] was and threatened her on one occasion." (App. at 7.) Without further discussion, the IJ also denied her application for relief.

De Paula and Alves appealed to the BIA, which dismissed the appeal. The BIA held that the IJ made reasonable inferences from the record to find that De Paula had failed to establish that a protected ground was a "central reason" for his fear of persecution. (App. at 2.) Regarding Alves, the BIA stated that her "testimony and asylum application focused on events which arose based upon her marriage to [De Paula], and she did not describe any mistreatment unrelated to the dispute between the gang

4

members and her husband and his father." (App. at 3 (citation omitted).) De Paula and Alves then filed a motion to reconsider on various grounds, which the BIA also denied. The BIA credited their argument for reconsideration insofar as the IJ had failed to consider the purported connection between De Paula's altercation and the death of his father. However, the BIA held that the error was harmless because the IJ had reached the conclusion that the killing of De Paula's father was unrelated to De Paula. The BIA stated that its failure to review De Paula's request for relief under the CAT was also harmless error, as the IJ had analyzed that claim and De Paula had not met his burden of proof. Finally, the BIA held that it did not have to separately consider Alves's application because "her claims were based on [De Paula's] claims." (Supp. App. at 3.)

Having failed to obtain relief, De Paula and Alves timely petitioned our Court for review.[5]

## II. Discussion[6]

De Paula and Alves raise several issues that were rejected by the BIA on reconsideration. With respect to the denial of relief to De Paula, they submit that the evidence does not substantially support that decision. Specifically, they seek remand to

---

[5] De Paula and Alves filed a petition for review after the BIA issued its decision denying their appeal. Following the BIA's denial of their motion for reconsideration, they filed another petition for review, which we consolidated for purposes of the responsive brief and disposition. We ordered De Paula and Alves to file supplemental briefing and will cite to the supplemental appendix attached to that briefing as "Supp. App."

[6] We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1).

5

the IJ for the failure to consider the connection between De Paula's activities and his father's death as evidence supporting persecution on the ground of family membership. They also ask us to vacate and remand the denial of CAT relief to De Paula, arguing that the BIA engaged in "impermissible fact-finding" regarding the likelihood that he would be tortured and that it "ignore[d] evidence reflecting a cooperative relationship between the gangs and the police in Brazil." (Petitioners' Supp. Opening Br. at 11.) In addition, they contend that the failure to separately consider Alves's application deprived her of due process.[7]

---

[7] De Paula and Alves also argue that they were "deprived … of a meaningful opportunity to present their entire claims for relief" because the IJ denied their motion to accept late-filed documents and motion for a continuance to present expert testimony about conditions in Brazil. (Petitioners' Opening Br. at 24.) The BIA held that the IJ did not err in either regard. We review the denial of a motion for a continuance for abuse of discretion. *Khan v. Att'y Gen.*, 448 F.3d 226, 233 (3d Cir. 2006). As noted *infra*, we review de novo whether a petitioner's due process rights were violated. *Cabrera-Perez v. Gonzales*, 456 F.3d 109, 115 (3d Cir. 2006).

At the November 14, 2011, hearing, counsel for De Paula and Alves asked the IJ to accept about 200 pages of late-filed documents and requested a continuance to present expert testimony about conditions in Brazil. The IJ had previously told counsel that he would "not accept any material within ten days of the merits hearing … unless good cause is shown." (A.R. at 378.) Counsel for De Paula and Alves did not provide any explanation for the eleventh-hour requests, except to cite internal law firm delay.

With respect to the potential expert witness, the BIA took into account that De Paula and Alves had not located a specific expert witness, submitted a witness list, or presented an expert report to support their request for a continuance. Under those circumstances, the denial of the motion for continuance was not an abuse of discretion. As for the late-filed documents, many of those were redundant of testimonial or documentary evidence already of record, such as background materials on Brazil or the harassment against De Paula's relatives. Moreover, the IJ allowed counsel to identify and submit about 40 pages of those documents by fax, despite the failure to show good cause for the delay. We therefore do not discern any due process violation stemming from the denial of the evidentiary motions.

We "review the administrative record on which the final removal order is based." *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005). "The 'final order' to be reviewed is usually that of the [BIA]," unless "the BIA simply states 'that it affirms the IJ's decision for the reasons set forth in that decision.'" *Id.* (citation omitted). In that case, "the IJ's opinion effectively becomes the BIA's, and, accordingly, a court must review the IJ's decision." *Id.* (citation omitted) (internal quotation marks omitted). As the BIA did not defer to or merely adopt the IJ's decision in either denying De Paula and Alves's appeal or denying their motion to reconsider, we will review the BIA's decisions here.

### A. Substantial Evidence[8]

#### 1. *Asylum and withholding of removal*

De Paula and Alves argue that proper consideration of the evidence connecting De Paula's activities with his father's death could afford them relief in the form of asylum or withholding of removal on account of family ties. Specifically, they argue that it is "impossible to reconcile" the BIA's initial decision reviewing the IJ's characterization of evidence with the BIA's decision on reconsideration, which held that the IJ's characterization of evidence was in error yet harmless. (Petitioners' Supp. Opening Br. at 9.)

---

[8] "Our review of factual findings, including findings of persecution and fear of persecution, is for substantial evidence, which means we must uphold findings of fact unless the record evidence compels a contrary finding." *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 425 (3d Cir. 2011). In addition, "we will view an error as harmless and not necessitating a remand to the BIA when it is highly probable that the error did not affect the outcome of the case." *Id.* at 427; *see also NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (noting that remand to an agency is not necessary when it "would be an idle and useless formality").

7

Pursuant to the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1158(b)(1), the Attorney General has the discretionary power to grant asylum to an alien who qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42)(A).  To make out a case for refugee status under § 1101(a)(42)(A), an applicant must show "either past persecution or a well-founded fear of future persecution if returned to her prior country of residence based on 'race, religion, nationality, membership in a particular social group, or political opinion.'"  *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003) (quoting 8 U.S.C. § 1101(a)(42)(A)).  An asylum applicant must establish that one of those protected categories was or will be "at least one central reason" for persecution.  8 U.S.C. § 1158(b)(1)(B)(i).  "[A] persecutor may have more than one central motivation for his or her actions; whether one of those central reasons is more or less important than another is irrelevant."  *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 129 (3d Cir. 2009).  However, "asylum may not be granted if a protected ground is only an 'incidental, tangential, or superficial' reason for persecution of an asylum applicant."  *Id.* at 130.  Unlike asylum, which is discretionary, "withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is mandatory."  *Singh v. Gonzales*, 406 F.3d 191, 196 (3d Cir. 2005) (citation omitted).  To succeed on an application for withholding of removal, the applicant must "meet[] a more stringent standard" that "'more likely than not' … he or she will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion if deported to his or her home country."  *Id.* (citation omitted).

8

We have "accepted the definition for a 'particular social group' developed by the BIA," *i.e.*, "'a group of persons all of whom share a common, immutable characteristic.'" *Lukwago v. Ashcroft*, 329 F.3d 157, 171 (3d Cir. 2003) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985), *overruled in part as stated in Matter of Mogharrabi*, 19 I. & N. Dec. 439 (B.I.A. 1987)). "[W]hatever the common characteristic that defines the group, it must be one that members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.* (quoting *Acosta*, 19 I. & N. Dec. at 233) (internal quotation marks omitted). We have further acknowledged that the BIA considers "membership in a particular social group" to include "kinship ties." *Singh*, 406 F.3d at 196 n.5 (noting "that the BIA has identified kinship ties as an innate, shared characteristic"); *see also Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1993) (same).

As the BIA acknowledged on reconsideration, the IJ did not consider the evidence that, just before De Paula's father was killed, the gang member who pulled the trigger had told him "this was because of [your] son and this is for you." (A.R. at 411.) The BIA decided that the remark should have been considered but dismissed the error as harmless, based on the IJ's conclusion that the killing of De Paula's father was unrelated to De Paula. We agree that the failure to consider a possible nexus between De Paula and his father's death was erroneous, but it cannot be that such error was harmless simply because the IJ decided that De Paula was the victim of criminal revenge. The alleged harmfulness of the error lies in the incomplete consideration of the record, which cannot be assumed away by referring to the conclusion reached by the infirm process. The IJ's

9

oversight may indeed turn out to be harmless because, even if it is found that the

persecution of De Paula's father was partially based on a family relationship, that finding

would not necessarily support the converse conclusion that any persecution against

De Paula would be on account of his kinship tie to his father. Nevertheless, because we

will, for reasons explained below, remand for independent consideration of Alves's

application, we will also remand for proper consideration of the possibility of a nexus

between De Paula's alleged fear of persecution and his father's death.[9]

2.    *Relief under the CAT*

De Paula and Alves also argue that we should remand the denial of De Paula's

request for relief under the CAT because, "[t]hough the [BIA] addressed the CAT issue

in its [reconsideration] decision, it disposed of the claim on a basis other than that relied

upon by the IJ." (Petitioners' Reply Br. at 5.) They claim that the BIA "impermissibly

acted as the trier of fact" (*id.*) and "ignore[d] evidence reflecting a cooperative

relationship between the gangs and the police in Brazil," including the refusal of the

---

[9] As the BIA cannot conduct its own fact-finding, 8 C.F.R. § 1003.1(d)(3)(i), (iv), we will remand with instructions to allow the IJ to consider such nexus in the first instance. We note, however, the logical difficulty presented by such a nexus, even if it exists. It is odd to think that, although someone who is the victim of a purely criminal act cannot rely on that act as a basis for asylum, a relative of the victim can rely on kinship to claim membership in a protected class and thereby seek asylum. The relative stands in a better position than does the victim. That oddity is further compounded by the circularity evident in this case. De Paula was the victim of purely criminal acts – the stabbing and later efforts at revenge by the gang – which, the IJ concluded, do not constitute a basis for asylum. Yet, because his father was killed in another criminal act during which the murderer mentioned De Paula, simple criminality was perhaps converted into a basis for asylum. Whether that alchemy is legally sound has not been briefed or argued before us, but it may be worth exploring with the parties once this matter is before the IJ and BIA again.

10

police to investigate the killing of De Paula's father, the failure of the police to investigate the attack on De Paula's sisters, and the State Department's report regarding alleged corruption of Brazilian police. (Petitioners' Supp. Opening Br. at 11-12).

Under the CAT, "it became the policy of the United States not to expel … or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 64 (3d Cir. 2007) (omission in original) (citation omitted) (internal quotation marks omitted). An alien seeking relief under the CAT "bears the burden of establishing that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."[10] *Id.* (citation omitted) (internal quotation marks omitted). The applicant "can satisfy the burden established for CAT relief by producing sufficient evidence that the government in question is willfully blind to such activities." *Id.* at 65.

Contrary to the De Paula and Alves's position, the BIA did not ignore the evidence regarding the alleged relationship between gangs and police in Brazil. On reconsideration, it reviewed the reasoning provided by the IJ, who expressly considered that evidence and held that De Paula had failed to carry his burden. The evidence here was not "so compelling that no reasonable factfinder could conclude as the BIA did" on

---

[10] "Unlike with asylum or withholding or removal, an alien seeking relief under the CAT need not establish that he/she is a 'refugee' and therefore need not establish that torture is inflicted 'on account of' any protected status." *Silva-Rengifo*, 473 F.3d at 64 (citation omitted).

11

De Paula's request for CAT relief. *Kayembe*, 334 F.3d at 234. Accordingly, we will deny the petition for review on De Paula's request for relief under the CAT.

### C. Due Process[11]

Alves, meanwhile, raises a separate claim, arguing that she was denied due process when the IJ and BIA failed to independently consider her application for relief. "In the removal context, due process requires that 'an alien be provided with a full and fair hearing and a reasonable opportunity to present evidence.'" *Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012) (quoting *Romanishyn v. Att'y Gen.*, 455 F.3d 175, 185 (3d Cir. 2006)). That includes "the right to 'an individualized determination of [her] interests.'" *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (citation omitted).

The BIA's conclusion that Alves's application did not require a separate determination because "her claims were based on [De Paula's] claims" was erroneous. (Supp. App. at 3.) Although their applications for relief were based on the same gang-related incidents, Alves may be situated differently than De Paula. For instance, whereas De Paula may not have shown that his fear of persecution ultimately arises from anything but personal retribution, Alves may be able to show a nexus between her past persecution and her spousal relationship to De Paula.[12] Alves also claims that evidence could establish that she would face more persecution in Brazil than De Paula because of her gender. We do not reach that argument. Insofar as the IJ and the BIA presumed that

---

[11] We review de novo the legal question of whether a petitioner's due process rights were violated. *Cabrera-Perez*, 456 F.3d at 115.

[12] *See supra* note 9.

12

Alves was situated similarly to De Paula, that deprived Alves of an individualized determination on her application. We will thus vacate and remand for a consideration of Alves's application that comports with due process.

**III.     Conclusion**

For the foregoing reasons, we will grant in part and deny in part De Paula's and Alves's petitions for review. The petitions will be remanded to the BIA for further remand to an IJ for proceedings consistent with this opinion.