NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4502
_____

GREGORY BARKER,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A037-136-805)
Immigration Judge:  Leo Finston
_____

Argued January 21, 2015
Before:  FISHER, JORDAN and GREENAWAY, Jr., *Circuit Judges*.

(Filed: July 10, 2015)

Bennett E. Cooper, Esq.
Shannon E. Trebbe, Esq.  **(ARGUED)**
Steptoe & Johnson
201 East Washington Street
Suite 1600
Phoenix, AZ 85004,
          *Counsel for Petitioner*

Laura Halliday Hickein, Esq. *(ARGUED)*
Thomas W. Hussey, Esq.
Justin R. Markel, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044,
              *Counsel for Respondent*

_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

Gregory Barker challenges the decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ") removal order. Barker argues that his due process rights were violated because he was incompetent to represent himself in his removal proceedings. We will deny the petition for review.[1]

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The Court acknowledges the excellent advocacy of pro bono counsel, Bennett Evan Cooper and Shannon E. Trebbe of Steptoe & Johnson LLP, on behalf of Mr. Barker.

A native of Guyana, Barker immigrated to the United States when he was four years old. He was admitted as a lawful permanent resident and has lived here for the past thirty-four years. During that time, Barker had several encounters with the criminal justice system, most notably in 1998 when he pled guilty to possession of cocaine with intent to distribute in New Jersey.

In January 2012, the Department of Homeland Security issued a notice to appear charging Barker with removability based on his 1998 conviction. On March 12, 2012, Barker appeared before the IJ, who explained the charges in the notice to appear and informed Barker of his rights, including his right to counsel at no cost to the government. Barker told the IJ he would like time to find an attorney, and the IJ granted a continuance.

On March 28, 2012, Barker appeared before the IJ, this time represented by counsel. Barker's counsel moved for a continuance to familiarize himself with the case and the IJ granted the motion. At the next hearing on April 19, 2012, Barker's counsel conceded that Barker was removable based on the 1998 conviction and that Barker had no other available relief, but counsel sought a continuance to allow Barker to pursue post-conviction relief to vacate the 1998 conviction. The IJ granted that continuance too, and did so again for the same reasons on June 4 and July 10.

On August 16, 2012, Barker's counsel moved to terminate his representation, citing an irreconcilable breakdown of the attorney-client relationship; Barker agreed to the motion. The IJ continued the proceedings to give Barker an opportunity to retain a new attorney. At the next hearing on September 19, however, Barker had yet to obtain

3

new representation. He told the IJ he was waiting to hear back from attorneys whom he had just contacted. Although Barker was still unrepresented, the IJ decided he needed to make some progress on Barker's case, and in response to questioning, Barker admitted to the allegations in his notice to appear and conceded his removability. The IJ then continued the proceedings to give Barker more time to find an attorney.

Over the next eight months, Barker appeared several more times before the IJ, each time without counsel. During this time, Barker completed an application for asylum and updated the IJ on his post-conviction relief proceedings. On one occasion, Barker told the IJ, "I honestly don't wish to represent myself." J.A. 145.

At a hearing on May 7, 2013, Barker informed the IJ that his post-conviction relief was denied, purportedly because "they didn't know where [he] was" and "the law didn't apply" when he pled guilty in 1998. J.A. 164.[2] Although Barker reiterated his desire not to represent himself, the IJ decided that the proceedings should move forward with Barker representing himself based on the number of continuances already granted and the lack of any reasonable expectation Barker would obtain an attorney after failing to do so up to that point. Barker provided the IJ with basic information about his background. During his colloquy with the IJ, Barker struggled momentarily to remember the name of his most recent employer, but he soon remembered it, explaining that he was "quite nervous." J.A. 169–70. Barker also told the IJ he did not know of anyone in his family

---

[2] In fact, Barker's application for post-conviction relief was denied because it was untimely and failed to establish an ineffective assistance of counsel claim.

4

who had been harmed in Guyana or of any activities he had engaged in that might cause problems for him in Guyana. The IJ asked Barker if he was on any medications, and Barker said he was not "[a]s of late." J.A. 177.

At the end of the hearing, the IJ asked Barker if he had anything he wished to add before a final decision was rendered. Barker claimed he did not know this hearing would be the last one, and he said that he would have called his family to testify on his behalf had he known. The IJ rejected the request for an additional continuance, found Barker removable, and denied his requests for withholding of removal, asylum, and protection under the Convention Against Torture.

Barker appealed the IJ's decision to the BIA, raising for the first time the issue of his mental competency. Barker argued that he was mentally incompetent and could not represent himself in his removal proceedings. The BIA rejected Barker's incompetency argument as well as his other arguments and denied his appeal. Barker timely petitioned for review.

## II.

The IJ had jurisdiction under 8 U.S.C. § 1229a. The BIA had jurisdiction to review the IJ's order of removal under 8 U.S.C. § 1103(g)(2) and 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction to review constitutional claims and questions of law in the BIA's decision under 8 U.S.C. § 1252(a)(2)(D). We review the BIA's determination of a due process claim de novo. *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153 (3d Cir. 2007).

5

III.

No one disputes that Barker is entitled to due process in his removal proceedings. Due process in this context guarantees aliens "the right to a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf." *Cabrera-Perez v. Gonzales*, 456 F.3d 109, 115 (3d Cir. 2006) (per curiam). Barker bears the burden of showing that his due process rights were violated, *Khan v. Att'y Gen.*, 448 F.3d 226, 236 (3d Cir. 2006), which, as explained below, he has failed to do.

Barker's principal argument is that due process requires immigration judges to ask a series of questions of every unrepresented alien in removal proceedings to assess the alien's competency.[3] Relying on the balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), Barker argues that due process requires immigration judges to ask these questions because an alien's individual interest in providing a defense to removal is substantial, the risk of not identifying incompetent aliens is great unless these questions are asked, and the burden on the Government to ask the questions is minimal.

The BIA's current framework presumes an alien is competent unless the alien exhibits indicia of incompetency. *Matter of M-A-M-*, 25 I & N Dec. 474, 477 (BIA 2011).

---

[3] The questions are: "[1] Whether the alien is currently suffering or has recently suffered from a medical problem; [2] Whether the alien is on any medication or mind-altering substance; [3] Whether the alien is currently suffering or has suffered in the past from a mental illness or disability; [4] Whether the alien can state in his or her own words the purpose of the proceedings; [5] Whether the alien feels that he or she cannot provide his or her own defense, and why the alien feels that way; [and 6] What evidence the alien intends to provide in his or her own defense, including which witnesses will be called during the proceedings." Barker's Br. 15.

Borrowing from the competency standard in criminal cases, the BIA's test for competency is "whether [the alien] has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses." *Id.* at 479. Indicia of incompetency will always be case-specific, but generally include issues with the alien's behavior during proceedings, e.g., an inability to respond to questions, or with the alien's medical history. *Id.* at 479–80.

In considering whether more is constitutionally required, we start by recognizing that aliens in removal proceedings are not entitled to the full panoply of constitutional protections afforded to criminal defendants. *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). One of the key differences is that incompetent persons may not be tried in a criminal prosecution, *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996), but they may be subject to removal proceedings, *Brue v. Gonzales*, 464 F.3d 1227, 1233 (10th Cir. 2006). Yet despite the Constitution's prohibition of criminal trials of incompetent defendants, criminal defendants are not constitutionally entitled to sua sponte questioning by a judge to ascertain their mental competency in every case. Rather, a competency hearing is only required when there is sufficient reason to doubt a criminal defendant's mental competency, *see Drope v. Missouri*, 420 U.S. 162, 180 (1975) (discussing factors that could trigger the need for "further inquiry"), and it is constitutional to presume a criminal defendant is competent and to place the burden of proof on him to prove incompetency by a preponderance of the evidence, *see Cooper*, 517 U.S. at 355.

7

Therefore, Barker's argument before us—that unrepresented aliens in removal proceedings are always entitled to sua sponte questioning to ascertain their mental competency—effectively asks us to hold that the Constitution requires *more* protections for aliens in removal proceedings than it does for defendants in criminal prosecutions. We cannot do so. There is nothing fundamentally unfair about a framework that presumes aliens are competent and requires immigration judges to address the alien's competency only when there are indicia of incompetency. This framework satisfies the minimal constitutional protections afforded to aliens in removal proceedings.

Applying the *Mathews* balancing test reinforces our conclusion. While we recognize an alien's strong individual interest to remain in this country, we also recognize the Government's strong interest in efficient administration of immigration laws. We think competency in this context is fairly assessed through observation of an alien's conduct in removal proceedings as well as consideration of any other evidence bearing on competency. Requiring immigration judges to ask the questions Barker proposes in every proceeding with an unrepresented alien is unlikely to identify many more incompetent individuals than the current framework does and will cause delays in removal proceedings.

Finally, we have reviewed the record in this case and have not found any indicia of incompetency that should have triggered greater scrutiny of Barker's competency from the IJ. At most, Barker has identified examples of his lack of familiarity with removal proceedings and isolated instances of poor memory. Nor has Barker identified anything

in his personal background that suggests he lacked mental competency. Indeed, the record shows Barker participated in his own removal proceedings, answered questions asked of him, pursued post-conviction relief in his related criminal proceeding, and submitted an application for asylum.

Accordingly, we conclude that Barker's due process rights were not violated.

IV.

For the foregoing reasons, we will deny the petition for review.