**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2158
_____

MELAHAT KARTAL
a/k/a Melahat Cogurcuoglu,
a/k/a Melahat Karaduman,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(BIA: A047-971-732)
Immigration Judge: Ramin Rastegar

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 4, 2019

Before: CHAGARES and HARDIMAN, <u>Circuit</u> <u>Judges</u>, and GOLDBERG, <u>District</u>
<u>Judge</u>[+].

(Filed: May 1, 2 019)
_____

OPINION[*]
_____

_____

  [+] The Honorable Mitchell S. Goldberg, United States District Judge of the United
States District Court for the Eastern District of Pennsylvania, sitting by designation.
  [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

CHAGARES, Circuit Judge.

Melahat Kartal[1] petitions for review of the order of the Board of Immigration Appeals ("BIA") dismissing her appeal of the denial of her petition to remove the conditions on her residency status. Because we lack jurisdiction to review some of Kartal's arguments and conclude that the remaining arguments are meritless, we will dismiss her petition in part and deny it in part.

I.

We write principally for the parties and therefore recite only those facts necessary to our decision. Kartal was born in Turkey. There, she married Orhan Cogurcuoglu[2] in 1991. Kartal and Orhan had two children in Turkey before they divorced in June 2000.

Kartal married Hamdi Kartal, a United States citizen, in Turkey on January 29, 2001. Hamdi successfully applied for a green card for Kartal. Hamdi, Kartal, and Kartal's two children then entered the United States on July 10, 2001. Because she and Hamdi were married, Kartal was admitted to the country as a conditional permanent resident. The family lived together for a few months in an apartment in Beverly, New Jersey. Hamdi and Kartal divorced on October 22, 2001.

Thereafter, Orhan, who was now in the United States, reconnected with Kartal. Orhan moved into the apartment after Hamdi left so he could watch the children at night

_____

[1] The petitioner has also been known as Melahat Cogurcuoglu and Melahat Karaduman. We refer to her in this opinion as Kartal.

[2] Like the parties do in their briefs, we will respectfully refer to the individuals mentioned in this opinion — with the exception of petitioner Kartal — by their first names.

2

while Kartal worked. He lived there from 2002 to 2005. In late 2001 or early 2002, Orhan allegedly raped Kartal. Kartal said she told only her neighbor, Pinar Kilicoglu, about the attack. In August 2002, Kartal gave birth in the United States to her third child with Orhan.

In August 2007, Kartal petitioned to remove the conditions on her residency. In December 2008, Kartal's conditional status was terminated for failure to establish a good faith marriage with Hamdi, and she was served with a Notice to Appear. Kartal conceded removability under 8 U.S.C. § 1227(a)(1)(D)(i), and renewed her application for a good faith waiver before the Immigration Judge ("IJ").

The IJ held a hearing in March 2017 regarding Kartal's application and heard testimony from Kartal (through a translator), her two eldest children, and Pinar. Kartal also submitted a declaration from Hamdi attesting to the validity of their marriage, a doctor's letter conveying that Kartal may be forgetful under stress, a June 2007 electric bill addressed to the Kartals at the Beverly apartment, and June and September 2002 statements from a joint bank account held in both of their names.

The IJ denied Kartal's application. The BIA upheld the IJ's decision on appeal, rejecting the contentions that the IJ violated Kartal's due process rights and incorrectly denied her petition. Kartal now petitions for review of the BIA's order.

II.

The BIA's jurisdiction over Kartal's appeal was based on 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. This Court typically has jurisdiction to review orders of the BIA pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's written decision when considering

3

Kartal's petition, but "'to the extent the BIA deferred to or adopted the [IJ's] reasoning' on particular issues, we may consider both opinions on those points." Mendoza-Ordonez v. Att'y Gen., 869 F.3d 164, 168–69 (3d Cir. 2017) (quoting Nelson v. Att'y Gen., 685 F.3d 318, 321 (3d Cir. 2012)).

### III.

Kartal argues that the BIA made legal and factual errors in dismissing her appeal, and that the IJ violated her due process rights.

### A.

We lack jurisdiction to review the discretionary decision of the Secretary of Homeland Security, 8 U.S.C. § 1252(a)(2)(B)(ii), not to "remove the conditional basis of the permanent resident status for an alien" who does not establish a good faith marriage to a United States citizen, 8 U.S.C. § 1186a(c)(4). See Urena-Tavarez v. Ashcroft, 367 F.3d 154, 160–61 (3d Cir. 2004). We may, however, review Kartal's "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), so long as they are not "challenges to factual or discretionary determinations" recast as legal questions, Jarbough v. Att'y Gen., 483 F.3d 184, 190 (3d Cir. 2007). Unfortunately for Kartal, many are.

Kartal argues that even though the BIA was to presume the credibility of her witnesses' testimony because the IJ did not make an explicit adverse credibility determination, 8 U.S.C. § 1229a(c)(4)(C), it "discount[ed]" certain testimony and relied on other evidence. Kartal Br. 40. That is, she challenges the weight attributed to evidence, which we cannot review. See Kartal Br. 36 (arguing that the BIA "failed to consider the credible testimony of [Kartal's] children" in one regard "and instead relied

4

on the[ir] inability . . . to remember insignificant details")[3]; Jarbough, 483 F.3d at 189 (suggesting that arguments that "the BIA incorrectly weighed" or "failed to consider evidence . . . are not questions of law under § 1252(a)(2)(D)").

Kartal also claims that the IJ applied an "excessively rigorous legal standard," Kartal Br. 2, by requiring evidence "establish[ing] commingling of financial assets and liabilities during her marriage," Kartal Br. 43 (quoting Joint Appendix ("JA") 4). Kartal's only evidence of financial commingling comprised the June 2007 electric bill and the June and September 2002 bank statements. True, the applicable regulation does not expressly require evidence of financial commingling to relate to the marital period, see 8 C.F.R. § 1216.5(e)(2)(i), but "[t]he determination of . . . the weight to be given" evidence of financial commingling postdating the marriage is "within the sole discretion" of the IJ, 8 U.S.C. § 1186a(c)(4), and therefore outside the scope of our review.

Kartal next contests the determination that her memory problems were irrelevant to her credibility. We lack jurisdiction to review the weight the IJ ascribed to evidence regarding Kartal's memory problems. Jarbough, 483 F.3d at 189. Kartal also argues that the IJ erroneously stated that her counsel only raised an argument concerning her memory problems during closing arguments, but the IJ was correct. And her contention that "the IJ rejected the doctor's letter out of hand" before hearing her testimony, Kartal

_____

[3] Kartal's challenge to the BIA's conclusion, in light of the rebuttable presumption of credibility, that the IJ "permissibly found the[ witnesses'] testimony to be insufficiently persuasive," JA4 n.1, lacks merit. See 8 U.S.C. § 1229a(c)(4)(B) (suggesting a distinction between the credibility and persuasiveness of testimony when determining whether an alien "has satisfied [his] burden of proof" for relief).

Br. 47, is likewise unpersuasive because the IJ explained that he "will give it whatever weight [he] deem[s] appropriate," JA158, and because even if the IJ erred, Kartal was not prejudiced, as her counsel disclaimed reliance on the prescription-pad letters.

We likewise lack jurisdiction over Kartal's challenge to the conclusion that the evidence regarding the length of her cohabitation with Hamdi in this country, the size of her wedding, and information regarding the honeymoon is inconsistent, as that argument raises neither a constitutional nor a legal question.

B.

Kartal also raises several due process claims, over which we do have jurisdiction, 8 U.S.C. § 1252(a)(2)(D), and which we review de novo, Abulashvili v. Att'y Gen., 663 F.3d 197, 207 (3d Cir. 2011).

Kartal is entitled "to a full and fair hearing that allows [her] a reasonable opportunity to present evidence on [her] behalf," Jarbough, 483 F.3d at 192 (quoting Cabrera–Perez v. Gonzales, 456 F.3d 109, 115 (3d Cir. 2006)), before an impartial IJ who "must assiduously refrain from becoming [an] advocate[] for either party," Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003) (quoting Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999)). She must establish substantial prejudice to demonstrate a due process violation. Jarbough, 483 F.3d at 192.

Kartal argues that the IJ violated due process by: (1) acting as a government advocate; (2) revealing through his comments that he was biased against Kartal; and (3) failing to prevent and rectify translation issues during the hearing. As to her first claim, Kartal argues that the IJ "all but ma[de] [an] objection on [the government's] behalf" to

6

the presentation of Hamdi's declaration, Kartal Br. 16, interjected in the government's questioning in a way that advanced its position, and conducted an adversarial cross-examination. We cannot agree.

Although the IJ expressed surprise that the government had no objection regarding the admission of Hamdi's declaration without Hamdi present, the IJ stated that he would give the document "the weight that [he] deem[ed] appropriate after [he has] had a chance to hear from everyone involved," evidencing his awareness of his role as arbiter, not advocate. JA164. The IJ also relayed that his concern was being "unable to properly hear from [Hamdi]," id., not "protect[ing] the government . . . [because] its own counsel [wa]s not prepared," Abulashvili, 663 F.3d at 207.

We also see no merit to the claim that the IJ acted improperly during the government's questioning. The IJ asked Kartal numerous questions, but he is authorized to do so. 8 U.S.C. § 1229a(b)(1). He otherwise interjected during the government's lengthy examination to elicit a responsive answer or clarification from Kartal, to make a clarification for the record, or to move the case along, see Abdulrahman, 330 F.3d at 597 (holding that due process was not violated by the IJ "interject[ing] only to allow [the alien] to clarify inconsistent responses or . . . to respond in further detail"), and therefore did not serve as government counsel, see Abulashvili, 663 F.3d at 199, 207–08 (concluding that the IJ impermissibly acted as a government advocate when she "completely took over the cross-examination").[4] Nor were the IJ's questions during his

_____

[4] We reject the contention that the IJ "aided the government's attempt to use Ms. Kartal's divorce decree to impeach her testimony" by searching for the document and

7

own examination — which at times "reflect[ed] an annoyance and dissatisfaction with [Kartal's] testimony," Abdulrahman, 330 F.3d at 597 — adversarial to the degree of a due process violation.

Second, and relatedly, we disagree that the IJ's comments evinced bias. Although the IJ was persistent and discourteous at some points during Kartal's testimony, his conduct during the hearing as a whole was not so severe that Kartal was deprived of due process.[5] See, e.g., Cham v. Att'y Gen., 445 F.3d 683, 688, 691 (3d Cir. 2006) (concluding that the IJ, who chastised the alien for "just delaying everything" by testifying in English and warned him to "come up with an answer pretty quickly" or risk being found nonresponsive, violated due process); Wang v. Att'y Gen., 423 F.3d 260,

making a statement for the record. Kartal Br. 19. The record suggests instead that he "want[ed] to just make sure the record [wa]s clear and that we can all follow." JA201. The IJ's purportedly unnecessary comment that the government's attorney need not show Kartal the decree did not turn the IJ into a government advocate. And his action in seeking confirmation that the attorney did not wish to question Kartal on that issue further was not improper: he merely sought to ensure that counsel did not feel pressured to abandon that line of questioning just because the interpreter had requested a recess. As for the IJ's finding that the handwriting in the two affidavits provided by Kartal's neighbors was identical, that is precisely what he is permitted to do.

[5] We are unpersuaded by Kartal's argument that the IJ made "'[n]onevidence based assumptions' about Turkish culture" or "'broad character judgments' about Ms. Kartal's personal choice[]" to live with Orhan and let him "watch her children after she was raped." Kartal Br. 29, 30 (quoting Wang v. Att'y Gen., 423 F.3d 260, 268, 270 (3d Cir. 2005) (first alteration in original)). The IJ made no assumption regarding Turkish culture; he merely noted for the record that there was no documentary evidence that "people who undergo a second marriage in Turkey, don't actually have a full wedding with a wedding dress and photographs." JA193. And although it is improper to consider an alien's personal decisions regarding his family and living arrangements when those decisions are "irrelevant to the merits" of his claims, Wang, 423 F.3d at 270, Kartal's living arrangement with Orhan after her divorce from Hamdi is relevant to whether she entered into her marriage with Hamdi in good faith.

8

263, 265, 270 (3d Cir. 2005) (determining that the IJ, who stated that the alien "must be out of [his] mind" if he expected sympathy from her and explained "that she was 'comfortable denying asylum to the respondent . . . because he's a horrible father,'" acted improperly (citation omitted)).

Third, and finally, Kartal argues that the IJ violated her due process rights by dismissing the translator before Pinar's testimony without confirming that English is Pinar's best language and by failing to recognize and rectify translation problems during Kartal's testimony. As Kartal failed to advance either of these arguments before the BIA, we cannot consider them now. 8 U.S.C. § 1252(d)(1); Abdulrahman, 330 F.3d at 594–95. To the extent that a passing reference in Kartal's notice of appeal or brief to the BIA regarding issues with the translation of her own testimony gives us jurisdiction over that aspect of Kartal's claim, we are unpersuaded by her argument. Although Kartal's answers were at times nonresponsive, and the IJ, counsel, and the interpreter at times sought clarification from one another, the transcript does not reveal the "significant difficulty with . . . translation" featured in Kaita v. Attorney General, 522 F.3d 288, 294 (3d Cir. 2008), where "the IJ [at times] either explicitly stated that she could not understand the interpreter or the testimony came out indiscernible," or in Issiaka v. Attorney General, 569 F.3d 135, 141, 141 n.4, 142 n.5 (3d Cir. 2009), where, after some confusion, the IJ asked the alien if he understood the interpreter, and government counsel, who had some familiarity with the language being translated, alerted the court to translation issues.

9

## IV.

For the aforementioned reasons, we will dismiss Kartal's petition for review in part and deny it in part.